## BROWN *v.* DISTRICT OF COLUMBIA.

### APPEAL FROM THE COURT OF CLAIMS.

No. 224. Submitted April 13, 1888. — Decided May 14, 1888.

A proposition to pave streets in a municipality, made in writing by a contractor to the head of a board consisting of several members which by law was charged with the care and paving of the streets, although considered and agreed to by the head of the board, and although by his directions the secretary of the board wrote under it that it was " accepted by order of the board " and affixed his signature as secretary thereto, is not a " contract in writing signed by the parties making the same," if the action of the secretary was made without official acceptance of the proposition by the board, and without authority from them to write it.

On the facts in this case the court holds : (1) that the alleged contract with the board of public works was not a valid contract; (2) that it was never ratified by the board; (3) that it was never ratified by Congress; (4) that the portion of the plaintiff's claim which was for work performed was rejected by the board of audit, and that the Court of Claims was therefore without jurisdiction to entertain it.

THE case is stated in the opinion.

*Mr. C. C. Cole* and *Mr. Fillmore Beall* for appellant.

*Mr. Attorney General* and *Mr. Assistant Attorney General Howard* for appellee.

MR. JUSTICE LAMAR delivered the opinion of the court.

This is an appeal from a judgment of the Court of Claims dismissing the petition of the appellant, Talmadge E. Brown, who sued in that court to recover a judgment against the District of Columbia, appellee, for $200,000, in satisfaction of his claim for damages for breach of an alleged contract, and for work and labor performed and materials furnished in the paving of certain streets in the cities of Washington and Georgetown.

The petition was filed November 16, 1880, and contains four counts, the first of which is in substance as follows: That

from 1869 to 1874, inclusive, petitioner, William W. Ballard, and Edward L. Marsh, all of whom were citizens of the United States, were in partnership under the name of the Ballard Pavement Company, their business consisting in grading, paving, etc., streets, sidewalks, etc. ; that on or about December 10, 1872, said company made and completed a contract with the District of Columbia, whereby said company became bound to pave with wood pavement such streets, or parts of streets, in the cities of Washington and Georgetown, in the said District of Columbia, as the board of public works of said District should designate from time to time, to the amount of 75,000 square yards, said work to be assigned and completed during 1873, and at the price of $3.50 per square yard, and also to do such grading, hauling, filling, and setting of curbing on the streets paved by said company, and at the board prices, as the said board of public works should order or direct ; that by the terms of said contract the said work was to be paid for as the same progressed ; that at the time the said board of public works of the said District of Columbia made and entered into said contract with said pavement company the said board had full power and authority to make the same in the manner and form the same was made ; and that said contract was in the words and figures following, to wit :

" *The Ballard Pavement Company, Washington, D. C. :*

" Your proposition of this date, as follows :

" ' The Ballard Pavement Company hereby make proposals for the following work, with accompanying conditions :

" ' We will put down preserved wood pavement as follows : The Ballard block, the Perry block, or the wedge-shaped block, such as laid by Filbert & Taylor, in this city, as the contractors may elect, either to stand five inches high, for three dollars and fifty cents per square yard, and we hereby ask for seventy-five thousand square yards, contractors to have during the year 1873 within which to complete this work, the board not to stop the work without a gross violation of the contract on the part of the contractors, the streets to be designated by the board at such times as the company

shall be ready to commence work, said work to be paid for as the same progresses.

"'We also hereby apply for a separate and a further contract for so much of the grading, hauling, and filling as is not embraced in the contract for paving, and for setting the curbing on the streets, to be paved by us at board prices, subject to the conditions of the paving contract.'

"Is this day accepted.

"By order of the Board :        CHARLES S. JOHNSON,
                                                          "*Ass't Secretary.*"

The petition then alleges that in pursuance of said contract, and in part execution and performance thereof, said board of public works designated nine different pieces of work to be done by the company; all of which was done by it, to an aggregate amount of about 35,000 square yards, and that said company was prepared and ready to do all the rest of the 75,000 square yards specified in said contract, but that said board of public works failed and refused to designate any more work to be done by the company, whereby said company was damaged in the sum of $100,000; that said contract of December 10, 1872, was in effect ratified and confirmed, and the right of action thereon recognized and approved, by virtue of several acts and resolutions of Congress, among which are the act of June 20, 1874, resolution of December 21, 1874, act of March 3, 1875, joint resolution of March 14, 1876, act of June 11, 1878, and the act of June 16, 1880; and that the claims herein made were never rejected by the board of audit. The petition then alleges that on the 20th day of June, 1874, said W. W. Ballard and E. L. Marsh, for a full and valuable consideration, sold and assigned in writing all and singular their respective rights, interests, and claims in and to the cause of action herein set forth, whereby the plaintiff, Talmadge E. Brown, became the sole owner of said claim and cause of action, and is now the owner thereof, and has made no assignment or transfer of the same or any part thereof to any one, but still owns and holds the whole thereof in his own right.

The matters set up in the second, third, and fourth counts of the petition (whicn are, as claimant states, " only different forms of statement for the same claim ") have relation to the work done by the pavement company under the alleged contract of December 10, 1872, amounting in value to $129,569.85, for which they received certificates of the auditor of the board that they afterward sold in the market for about 50 cents on the dollar, realizing therefrom only $69,784.92. The second count relates to the work actually done, and avers that only one-half thereof has been paid for. The third count sets up the doing of the work, and the issuance of auditor's certificates therefor, under such circumstances as are claimed constituted the company an agent for the District to dispose of the certificates at their value, which was 50 cents on the dollar. And the fourth count sets up the doing of the work, the issuance and delivery to the pavement company of auditor's certificates, which are claimed to have been chattels, and a commodity only, and which were worth 50 per cent of their face value. It is to recover from the District of Columbia the other half of the value of these auditor's certificates that the claimant brings this action on these three counts.

To this petition the District of Columbia interposed a general denial, and also a special plea to the first count thereof, which set up a former adjudication of the matters involved in said first count in the Supreme Court of the District of Columbia. Replication was filed, issue was joined, and the case having been heard before the Court of Claims, that court, upon the evidence, found in favor of the District of Columbia and rendered judgment dismissing the claimant's petition. The separate findings of fact of the court below are seventeen in number, and are too lengthy to be incorporated in this opinion. The material facts will be referred to as we proceed.

The decision of the Court of Claims was based upon three grounds: (1) That the contract sued on was not a contract made with the board of public works of the District of Columbia, and was not one in writing as contemplated in § 37 of the act of February 21, 1871, 16 Stat. 419, 427; (2) that the claim set up in the first count of the petition was *res adjudicata*, it hav-

ing been once adjudicated by the Supreme Court of the District of Columbia adversely to the Ballard Pavement Company, of which the plaintiff below is the successor; and (3) that, under the act of June 16, 1880, § 8, 21 Stat. 284, 286, the Court of Claims was prohibited from taking jurisdiction of the claim set up in said first count, because that claim had been once rejected by the board of audit of the District of Columbia.

The decision of the court was clearly right, and the principles on which the learned judge based his conclusion are clear and undeniable.

The appellant contends that the alleged contract sued upon meets the requirements of § 37 of the act of February 21, 1871, which provides that "all contracts made by the said board of public works shall be in writing, and shall be signed by the parties making the same, and a copy thereof shall be filed in the office of the secretary of the District;" and that the contract sued upon being a formal proposition in writing, and an acceptance thereof in writing signed by the secretary of the board, whose authority to sign the same is not denied, and whose genuine signature thereto is admitted, was a valid contract binding upon the parties.

Numerous authorities are cited to show that the written acceptance by one party of a written proposal made to him by another party creates a contract of the same force and effect, as if formal articles of agreement had been written out and signed by said parties. The legal principle asserted is sound, but the fallacy of the argument lies in the assumption that the proposition of the pavement company was in fact submitted to the board, and that the latter did in fact authorize the letter to be written by secretary Johnson accepting the said proposition. Are these assumptions borne out by the evidence adduced at the trial? Upon this point we quote from the 2d, 3d, 4th, 5th, and 6th findings of facts:

"In the early part of that month, (December, 1872,) the said William W. Ballard and the claimant were in the city of Washington, and they had verbal negotiations with Alexander R. Shepherd, then and afterwards a member and vice-president of the board of public works of the District of Columbia,

which negotiations led them to write and send to that board a paper, a copy of which is given in the letter signed 'Charles S. Johnson, Ass't Secretary.' [This letter is quoted in the early part of this decision.] The said Charles S. Johnson was a clerk in the employment of the board of public works and was styled 'assistant secretary.'

"The journal of said board does not show that said proposition was ever before the board, nor does any acceptance thereof by the board appear otherwise than by the statement of said letter; nor does it appear that said Johnson was authorized by said board to write said letter, unless it should be inferred from his being a clerk of the board and styled assistant secretary; nor does it appear that the board or any member of it, except Alexander R. Shepherd, either saw or knew of said letter before or on the said 10th of December, 1872; nor can the original proposition, as drawn up by the claimant and said Ballard, be anywhere found among the papers or files of the board or of the District of Columbia, though searched for there; nor can any copy of said Johnson's letter be found in the books or files of the board or of the said District, though searched for there, and though it was the practice of the board to keep press copies of the letters that went out of its office.

"In all the transactions hereinafter set forth, connected with the matter of paving streets by the said company, it does not appear that any member of the company was before the said board, at any meeting thereof, in relation to that work. Their intercourse in regard to it was almost wholly with said Alexander R. Shepherd. It took place sometimes at his store and sometimes at the office of the board. When it took place at his store it does not appear that any other member of the board was present; when it took place at the office of the board, if other members of the board were present, and any member of the company spoke to them about the matter of that work, they would refer him to said Shepherd. When the company desired work to be designated for them to do they called on said Shepherd, supposing that whenever he said anything about the work in the District he represented the board

of public works — was the mouthpiece of the board. The said company, after receiving said Johnson's letter, proceeded to make preparations for laying down wooden pavement on streets in the District of Columbia, and made a contract for three million feet of lumber, estimated by them to be sufficient to make 75,000 square yards of pavement. In the spring of the year 1873 the company notified the board, through said Shepherd, that they were ready to proceed with the work of paving streets, and requested that such work should be designated for them to do; but none was designated until the latter part of June or beginning of July, when some parts of streets were designated and the company entered on the work of paving them. After doing so, and before they were allowed to receive any certificates of measurement showing work to have been done, they were required to enter into a written contract embracing the work and to give bond for its performance. They at first declined to sign such a contract, claiming that the terms contained in it were different from those of their proposition of December 10, 1872; but they afterwards signed the following contracts."

The findings set out in full the contracts, and further show that the company entered into five of such contracts with the board of public works, the first bearing date July 5 and the last December 19, 1873; that all the work done by the company and every yard of pavement laid by it were done and laid under one of those several contracts; that every engineer's certificate of measurement gave on its face the number of one of those contracts as that under which the work named in the certificate had been done; that the company signed a receipt for every such certificate, and that upon those certificates the company received the auditor's certificates, which they voluntarily sold in the market for about fifty cents on the dollar.

In the face of these facts, found almost wholly from the evidence on the part of the claimant, we are of the opinion that we would not be justified in finding that the alleged contract of December 10, 1872 — the one sued on here — was such as the statute prescribes, or that it was a valid contract in any respect.

By the 37th section of the act approved February 21, 1871, the board of public works is provided for, to consist of five persons, whose duties and powers it is said shall embrace the regulation and repair of the streets and highways of the District of Columbia. In *Barnes* v. *The District of Columbia,* 91 U. S. 540, this court held that, under that act, the board of public works was not an independent body, acting for itself, but was a part of the municipal corporation of the District of Columbia, to which was given the exclusive control of the streets and alleys; that in those matters the board acts as the representative of the corporation, or is "like an ordinary agent of the corporation." We have seen from the findings in the trial below that the board had made no contract with the company on the 10th of December, 1872. It consisted of five members. Those members were the joint agents of the District of Columbia in the management of its streets and alleys, and a contract with the board to be binding upon the District must have been ratified by a majority of the members of the board.

The rule on this subject has been well stated by Dillon in his work on Municipal Corporations, § 283, as follows:

"As a *general rule*, it may be stated, that not only where the corporate power resides in a *select body*, as a city council, but where it has been delegated to a *committee* or *agents*, then, in the absence of special provisions otherwise, a *minority* of the select body, or of the committee or agents, are powerless to bind the majority or do any valid act. If all the members of the select body or committee, or if all of the agents are assembled, or if *all* have been duly notified, and the minority refuse or neglect to meet with the others, a majority of those present may act, provided those present constitute a majority of the whole number. In other words, in such a case, a major part of the whole is necessary to constitute a quorum, and a majority of the quorum may act. If the major part withdraw so as to leave no quorum, the power of the minority to act is, in general, considered to cease."

It is said, however, by appellant's counsel, that, if the alleged contract of December 10th, 1872, was not originally

binding on the District of Columbia, it became valid and binding by reason of the fact that it was afterwards recognized by the parties, was performed in part by the District in designating the streets whereon the work should be done, by approving and accepting said work, and by the part performance of the contract on the part of the pavement company. In our apprehension no action of the board gives the slightest ground for this position. The refusal of the board to accept any of the work, or to allow any certificate of its amount to be given until after other contracts, entirely different in terms, were duly entered into, and bonds were given for their faithful performance, negatives any suggestion of recognition or ratification by the District of Columbia of the alleged contract of December 10th, 1872, or of any acquiescence in its part performance. This claim is utterly inconsistent with the conduct of the company. The very fact that it entered into these other contracts, different in terms from the alleged contract of December 10th, 1872, and accepted the certificates of the board issued for the work done under those contracts, (and those alone,) proves that it did not regard the verbal negotiations with Shepherd, and the unauthorized letter of Johnson thus disavowed by the board, as binding upon the District of Columbia.

The counsel for appellant further urge that, notwithstanding all this, the alleged contract sued on has been rendered valid by reason of the recognition of such contracts and the ratification thereof by Congress, citing the several acts of June 20, 1874, June 11, 1878, June 16, 1880, and the joint resolution of December 21, 1874.

We have not been referred to any particular section of any one of these acts that would work a confirmation or ratification of a transaction such as forms the basis of this suit. Nor does a close study of them disclose any such provision. On the contrary, by the act of June 16, 1880, § 8, 21 Stat. 284, 286, the Court of Claims is prohibited from taking jurisdiction of this claim as set up in the first count. That section provides that "No claim shall be presented to or considered by the Court of Claims under the provisions of this act which was rejected by the board of audit."

Now, it is shown by the record in this case that this identical claim (differing only in amount) was presented to the board of audit, and was disallowed by that board. The substance and the effect of the petition submitting such claim to the board of audit is substantially the same as that in the first count of the petition in this case. This is conclusively shown by the 15th finding :

"Upon the jacket wherein this petition and exhibit were inclosed this indorsement was made:

"'OFFICE BOARD OF AUDIT,
    *Washington, August* 3, 1874.

"'CLASS 4, No. 239.

"'Claims against the board of public works for which no evidence of indebtedness has been issued.

"'Claims damages for breach of contract in the sum of $75,000.'

"And on the opposite side of said jacket was written:

"'The within claim against the board of public works has been examined and not allowed.'

"The board of audit kept a record of claims allowed and disallowed, in which appear the following :

"'RECORD OF CLAIMS, CLASS 4.

| Date. | No. of claim. | Name. | Description of work. | Certificate No. | Claimed. | Allowed. | Disallowed. |
|---|---|---|---|---|---|---|---|
| 1874. Aug. | 3239 | Ballard Pavement Company. | Breach of contract. | . . . . . | 75,000 | . . . . . | 75,000 |

"And the members of the board of audit reported said claim to Congress in a list of disallowed claims."

The interest of the claimant in this case is the same as that of the Ballard Pavement Company, which presented the claim to the board of audit. He is the successor of that company. True, in that petition damages were claimed only to the extent of $75,000 for breach of the alleged contract of December 10, 1872, while here the claim for damages is laid at $100,000. That, however, is an immaterial matter. The

cause of action in each instance is the *breach of contract*, and the mere fact that in one instance the damages are laid at $75,000, while in the other at $100,000, does not change its identity.

The suggestion that the claim was not *rejected* by the board of audit within the meaning of § 8 of the act of June 16, 1880, *supra*, but was only *disallowed*, may be dismissed with the remark that the two words when used with reference to the disposition of claims are synonymous.

We think, therefore, that there was no jurisdiction in the Court of Claims to entertain this branch of the case.

We also concur with the court in holding that the judgment of the Supreme Court of the District of Columbia, in a suit brought on the 6th of January, 1875, by William W. Ballard, Edward L. Marsh, and the claimant, Talmadge E. Brown, against the District of Columbia, to recover damages alleged to have been sustained by them under the said proposition and said Johnson's letter sued on in this case, is a bar to the first count of the petition. *Gould* v. *Evansville &c. Railroad Co.*, 91 U. S. 526.

In no view that has been presented or that seems capable of presentation, can the alleged contract be considered binding upon the District of Columbia.

*The judgment of the Court of Claims is affirmed.*