ROLLINS INVESTMENT CO. *v.* GEORGE *et al.*

(*Circuit Court, D. Oregon.* December 28, 1891.)

**1. THE BRIDGE COMMITTEE.**
The bridge committee of the city of Portland is a mere agency of the city, for whose acts, done within the sphere of their authority, the city is liable; and therefore the city is a necessary and proper party to a suit for the specific performance of a contract, alleged to have been made with said committee for the sale and delivery of certain city bonds.

**2. SPECIFIC PERFORMANCE.**
A contract for the sale and delivery of certain bonds of the city of Portland is not such a contract as a court of equity will specifically enforce, for the damages which may be recovered in an action at law for the non-delivery will compensate for the same.

**3. CONTRACT, WHAT CONSTITUTES.**
A statute authorized the bridge committee of the city of Portland to sell and deliver its bonds for the purpose of building bridges across the Willamette, and the act required that the chairman of the committee should execute all written contracts on behalf thereof. *Held*, that a proposal in writing to purchase said bonds, and a resolution by the committee, entered in its minutes, accepting the same, constitute a written contract within the meaning of the statute, and is incomplete and invalid unless executed by the chairman.

(*Syllabus by the Court.*)

In Equity. Suit for the specific performance of a contract of sale of bonds, brought by the Rollins Investment Company against M. C. George, E. A. King, J. L. Sperry, C. H. Meussdorffer, William M. Ladd, John Parker, C. C. Redman, and T. W. Pittenger, constituting the bridge committee of the city of Portland, Or. Heard on demurrer to the bill. Demurrer sustained.

*Mr. O. F. Paxton*, for plaintiff.

*Mr. William T. Muir*, for defendants.

DEADY, J. This suit is brought by the Rollins Investment Company, a coporation formed under the laws of Colorado, to specifically enforce an alleged contract by which it claims to have purchased from the defendants $500,000 worth of bridge bonds of the city of Portland, and for a temporary injunction to restrain the defendants, in the mean time, from otherwise disposing of said bonds.

On the filing of the bill an order was made requiring the defendants to show cause why such an injunction should not issue, and in the mean time restraining them as prayed for in the bill.

The defendants are a committee of eight persons, created by the act of February 18, 1891, commonly called "The Meusdorffer Act." The act authorizes the cities of Portland, East Portland, and Albina to provide one or more suitable bridges across the Willamette, through the agency of these eight persons appointed from the tax-payers of Multno-

mah county by the two circuit judges thereof, and styled "The Bridge Committee." For this purpose the committee is authorized to issue and dispose of bonds of these cities of the par value of $500,000.

On February 19, 1891, the legislature framed an act "to incorporate the city of Portland," with boundaries including the territorial limits of East Portland and Albina, to take effect upon a favorable vote of the three localities. The election took place on the first Monday in June, 1891, and resulted in a vote for consolidation of the three towns into one, by the name of the "City of Portland."

The relation of these two acts, and the effect of the latter upon the former, were lately considered by the supreme court of the state, (*Winters* v. *George*, 27 Pac. Rep. 1041,) wherein it was held that the acts are *in pari materia*, and both in force, except so far as the elder act provides for the bonds of the three cities, which is superseded by the latter, and the vote for consolidation thereunder, so as to abolish the corporations of East Portland and Albina, and make the bonds issued those of the city of Portland, as thus constituted.

The defendants show cause by demurring to the bill, and objecting, first, that there is a defect of parties thereto, in that the city of Portland is not made a defendant.

In my judgment the objection is well taken. The committee is not a corporation, but a mere aggregation of persons authorized to do a certain thing for and on behalf of and in the name of the city. The city is responsible for its acts, done within the sphere of its authority. It is a mere agency of the corporation,—the city of Portland,—like the water committee, the police commissioners, or the common council. The committee is not capable of suing or being sued, as such. True, their powers and duties are defined by law, and the city cannot control them in the exercise or performance of the same; but, nevertheless, the committee exists only to do a certain thing on behalf of and in the name of the city, and this constitutes an agency. The city, as principal, is entitled to be heard on the question whether its agent—the bridge committee—has lawfully disposed of its bonds, and pledged its faith and resources for the payment of the same, and should be made defendant. *Barnes* v. *District of Columbia*, 91 U. S. 540; *Brown* v. *District of Columbia*, 127 U. S. 586, 8 Sup. Ct. Rep. 1314. But, as this objection can be overcome by an amendment to the bill, it is necessary to consider the matter further.

It is also objected that the plaintiff is not entitled to have this alleged contract specifically enforced, because, if it is injured by the non-performance thereof, it has an adequate remedy at law, in an action thereon for damages.

The tendency of courts in modern times is to enlarge, rather than restrict, the jurisdiction whereby courts of equity undertake to compel the specific performance of contracts concerning personalty; and with this tendency I sympathize. But no court has gone so far as to exercise this jurisdiction in a case where the remedy at law is adequate and the party is solvent.

These are the bonds of a solvent city. Indeed, it is alleged in the bill "that the city of Portland is a wealthy and well-known city, of high financial standing and good reputation; that its bonds are of greater value and more easily sold than bonds of ordinary cities and towns." Under these circumstances, it is difficult to see why an action at law for damages does not furnish the plaintiff a complete remedy for the non-delivery of the bonds. The difference, if any, between the price bid and the market price will be the measure of damages.

Mr. Justice Story states the case for specific performance, (2 Eq. Jur. § 716,) where he says:

"Whenever, therefore, the party wants the thing *in specie*, and he cannot otherwise be fully compensated, courts of equity will grant him a specific performance."

Here the party wants the thing (the bonds) *in specie*, but he can be otherwise (by an action for damages) fully compensated for its non-delivery.

And again the author says, (2 Story, Eq. Jur. § 717:)

"So courts of equity will not generally decree performance of a contract for the sale of stock or goods, not because of their personal nature, but because the damages at law, calculated on the market price of the stock or goods, are as complete a remedy to the purchaser as the delivery of the stock or goods contracted for, inasmuch as with the damages he may ordinarily purchase the same quantity of the like stock or goods."

Besides, these are the bonds of a municipality,—a part of and an agency of the state. They are, then, what are known as government or public bonds. Professor Pomeroy, in his work on Contracts, (section 17,) says:

"It is a settled rule that agreements to purchase and sell or deliver shares of government or other public stocks will not be specifically performed in equity, because such securities are always for sale, their price is known, and the damages awarded at law will enable the injured party to make himself whole by purchasing in the market."

There is an attempt in the bill by sundry allegations to make it appear that the plaintiff will sustain special and peculiar damages from the non-delivery of these bonds which cannot be recovered at law. But in my judgment they fail to show anything of the kind. For instance, it may be, according to these allegations, that the plaintiff may be put to more than ordinary inconvenience, in an action at law, in showing the value of these bonds in the principal markets of the world. But mere inconvenience is no reason why the remedy at law is inadequate; and the extra expense of making such proof may be recovered as costs.

My conclusion is that this is not a case for specific performance, and that this objection is well taken.

Objection is also taken by the demurrer that 'there is no valid and binding contract to sell and deliver these bonds to the plaintiff.

The act of February 18, 1891, provides that the bridge committee shall organize by the election of a chairman and clerk. Section 7 provides that "the chairman of the committee shall execute all written con-

tracts on behalf thereof, and sign all orders for the payment of money authorized thereby;" and it is elsewhere provided that the clerk shall attest all such contracts signed by the chairman.

It is alleged in the bill that on June the 10th the committee met, and adopted a resolution to the effect that it issue $500,000 of bonds, as provided by the act constituting the same, and advertise the bonds for sale in amounts to be determined by the committee. That on June 27th the committee resolved that $500,000 of the bonds be sold, and afterwards advertised the sale of said bonds in the Daily Oregonian, to the effect that proposals would be received for the purchase of the same until 12 noon of August 17, 1891, dated January 1, 1892, payable in 30 years from date, with 5 per cent. interest, payable on January and July 1st of each year, in gold coin of the United States, at certain points, as the purchaser may desire. That on August 17th the plaintiff made a bid in writing to purchase said bonds at 92.69 of their par value, to be delivered in three lots, on January 1, 1892, February 15, 1892, and April 1, 1892; that on August 18, 1891, the committee met and passed the following resolution: "Resolved, that the bid of the Rollins Investment Company for the bridge bonds be accepted;" and thereupon the defendants duly made and delivered to the plaintiff a copy of the offer to purchase, with the resolution accepting the same indorsed thereon, and signed by the clerk. That afterwards, and before the commencement of this suit, the plaintiffs gave notice to the defendants of the place where the bonds might be made payable; but on November 24th the committee met and rescinded the resolution accepting the bid of the Rollins Investment Company, and rejected it. The proceedings of the committee were all entered in their minutes.

It may be admitted that under ordinary circumstances this proposal and the acceptance of the same constituted a binding contract for the sale and delivery of the bonds, but just here the statute comes in and requires all written contracts to be executed—signed—by the chairman. This is a written contract, if anything, not executed by the chairman, and is therefore incomplete and ineffectual. The parties negotiated for the sale and delivery of these bonds, and came to an agreement or understanding in writing, but stopped short of the execution of the same by the chairman of the committee, which the statute requires to make a complete and binding contract.

The injunction is denied, and, unless amended, the bill is dismissed.