JOSEPH HEXTER,

*vs.*

COLUMBIA BAKING COMPANY, a corporation of the State of Delaware, EDWARD S. ROMINE, JOHN E. WILLIAMS, RICHARD W. DYER, GEORGE A. ZABRISKIE, JOHN SEYBOLD, MILTON J. BAKER, HARRY D. TIPTON and GEORGE A. PARSONS.

*New Castle, March* 13, 1929.

*James I. Boyce* and *James H. Hughes, Jr.*, of the firm of Ward & Gray, and *Francis N. Bangs* and *Ellwood M. Rabenold*, both of New York City, for complainant.

*Robert H. Richards* and *Austin V. Wood*, of Wheeling, W. Va., for defendants, Baking Company, Romine, Williams, and Parsons.

*William S. Potter*, for defendants Zabriskie, Baker, and Tipton.

THE CHANCELLOR. The question of law which this case presents is whether or not stockholders may by withdrawing themselves from the regular annual meeting of stockholders break the quorum which but for such withdrawal would otherwise exist, and thereby render the meeting impotent to transact the business for which it was convened.

There is some dispute of fact concerning what took place immediately prior to the withdrawal of Zabriskie and Tipton. The following is found by the court to be what occurred. Proxies had been invited from stockholders in which five persons, Hexter, Zabriskie, Romine, Williams and Dyer were named as attorneys-in-fact. A large number of such proxies was duly executed and returned for use at the meeting. The proxy authorized a majority of the attorneys to exercise all the powers conferred, including of course that of voting. All five of the attorneys-in-fact were present. Just before the meeting convened Zabriskie and Tipton learned that three of the proxy committee, constituting the majority, proposed to vote the proxies against the re-election of Hexter and Baker as directors. This was contrary to their wish and they protested. The meeting assembled with Zabriskie and Tipton present. Romine, chairman of the board of directors, presided. Zabriskie immediately moved an adjournment. It was suggested that the meeting should first organize by the election of a secretary. Thereupon Zabriskie withdrew his motion, and moved that Weisser act as secretary. The motion was carried by a *viva voce* vote. The stockholders present either in person or by proxy were then ascertained and announced as representing 60,998 shares out of a total outstanding voting stock of 100,000. Zabriskie and Tipton were counted among the number present. After some formal matters were attended to, Zabriskie again made a motion to adjourn. Ballots were prepared for the purpose of taking a vote on the motion. While they were being distributed, Zabriskie and Tipton stated that they were absenting themselves from the meeting. They thereupon left the room, taking with them the proxies which they had theretofore given for their own stock. A vote was taken upon the motion to adjourn. The result was 31,923 against and 3,245 in favor of adjournment.

The meeting then proceeded to the election of directors and the result was as stated in the above preliminary statement of facts.

These are the facts found by the court. They are supported not only by the minutes, but as well by the weight of the oral testimony. Had Zabriskie and Tipton remained, the number of shares specified in the by-laws as requisite for a quorum would

have been present at all times. The vote cast for the seven successful candidates for directors would have constituted a majority of the quorum. It is therefore apparent that the only possible method of defeating the election of the successful candidates was for Zabriskie and Tipton to leave the meeting and thereby attempt to destroy it on the theory that it could no longer proceed for lack of a quorum. By walking out they sought to achieve that which, if they remained, their voting strength was impotent to accomplish. Thus, they would, if they were right in appraising the legal consequences of their act, succeed in keeping the old board in office as holdovers and in defeating the choice of the majority there present.

The motive which actuated Zabriskie who spoke apparently not only for himself but as well for Tipton, sprung from the chagrin which he felt when he discovered that a majority of the attorneys-in-fact named in the proxies, of whom he was one, was going to vote the shares represented by them contrary to his wishes. He claimed that if the majority voted as they intended to do, it would be contrary to what he thought would be the wishes of the stockholders who had given the proxies. That, however, even if true would in itself constitute no good ground for protesting either the meeting's legality or the validity of its proceedings. When a stockholder gives an unrestricted proxy, as here, naming an attorney-in-fact to act in his stead, it must be presumed that what the attorney does in the proper exercise of the power conferred expresses the will of the stockholder. And where a majority of five attorneys is authorized to decide for the stockholder, the action of the majority carries with it a like presumption in its favor. *Smith v. San Francisco & North Pacific Ry. Co.*, 115 *Cal.* 584, 47 *P.* 582, 35 *L. R. A.* 309, 316, 56 *Am. St. Rep.* 119; 2 *Thompson on Corporations*, (3d Ed.) *p.* 353; 3 *Fletcher, Encyclopedia of Corporations, p.* 2833.

In so far as Zabriskie's protest of the meeting was based on the supposed disregard by the proxy committee of the wishes of the stockholders, it amounted to nothing in the eyes of the law, and any protest on that ground against the assembling of the meeting or its proceeding with the business of the selection of directors was entirely without justification. His withdrawal and

that of his associate, Tipton, was in fact attributable to the prospect of a defeat. They sought to circumvent it by attempting to break the quorum and thereby destroy the meeting.

The statute provides that directors shall be elected at an annual meeting of the stockholders to be held at a time and place named in the by-laws. This meeting was assembled at the time and place named in the by-laws for the purpose of performing the statutory duty of electing directors. When Zabriskie and Tipton withdrew for the purpose of defeating an election they, therefore, undertook to prevent the stockholders from doing an act which under the statute it was their duty on that very occasion to do.

It is true that where a by-law requires a certain number to be present to constitute "a quorum at all meetings," as here, the meeting cannot proceed unless a quorum is present. Mere abstention from the meeting of a sufficient number will prevent its existence, except perhaps for adjournment purposes. But when the number is present, and assists in the organization, the situation is an entirely different one. This by-law contains no provision that the quorum shall remain at all times. The language is a "majority * * * shall * * * constitute a quorum at all meetings of stockholders." It is different from the phraseology of the statute which requires a majority of the directors to constitute a quorum. The language of the statute touching directors' meetings is—"a quorum for the transaction of business." Such language as that might well be construed as meaning that the quorum must be present at all times when business is transacted. But there is no such strength of implication discoverable in the defendant corporation's by-law. There was a quorum at the stockholders' meeting at one time and the by-law requirement was at the outset of the meeting fully satisfied. Now can the withdrawal of stockholders whose sole purpose is to destroy the meeting by reducing the attending number below the quorum point be allowed to do so when their only justification is that the manifest result of the election will be displeasing to them? If they are to have such a right as that, it ought either to be supported by some express provision of the corporation's law, or founded in considerations of fairness or salutary policy. It is true as before stated that corporations may impose upon their stockholders' meetings the

restriction that a majority must be present to constitute a quorum and thereby put it in the power of absentees to defeat the meeting. There would seem to be no escape from that rule. But when a quorum is once present, the meeting organized and transacting business however little, there must under the authorities be some justifiable reason for withdrawal by any one to break the quorum, before such withdrawal can be allowed the effect of destroying the meeting. It has in substance been held by courts and stated by textwriters, that if the withdrawing stockholders are animated by a purpose solely to destroy the meeting by breaking a quorum because of whim, caprice or chagrin, the law will consider their action as unavailing and will permit the meeting to proceed. *Com. ex rel. Sheip v. Vandegrift*, 232 *Pa.* 53, 81 *A.* 153, 36 *L. R. A.* (*N. S.*) 45, *Ann. Cas.* 1912*C*, 1267; *Re Argus Printing Co.*, 1 *N. D.* 434, 48 *N. W.* 347, 12 *L. R. A.* 781, 788, 26 *Am. St. Rep.* 639; 2 *Thompson on Corporations*, (3d *Ed.*) *p.* 300 *et seq.;* 3 *Cook on Corporations*, (8th *Ed.*) *p.* 2112. Against these authorities, the solicitors for the complainant have cited *Brown v. District of Columbia*, 127 *U. S.* 579, 8 *S. Ct.* 1314, 32 *L. Ed.* 262, and *Bridgers v. Staton*, 150 *N. C.* 216, 63 *S. E.* 892. The case from the United States Supreme Court dealt with the validity of a contract alleged to have been made with the District of Columbia through its board of public works. What the court had to say as to the necessity of action by a majority of the board in order to constitute action binding on the District in its contract relations with claimants against it, does not seem to me to be relevant to the question which this case presents. The North Carolina case, according to the statement of it made by the solicitors for the complainants on their brief, is founded on a statute which required a majority of all stock to be present at an election of directors. That circumstance distinguishes the case from the instant one, for neither is there such a statute in this State, nor any by-law of this corporation in place of a statute, which expressly requires a majority to be present *at the election*. This corporation's by-law on the subject is general in its language and simply states that a majority shall constitute a quorum at all meetings of the stockholders. It is to be noted that in the *Vandegrift Case* in Pennsylvania the by-law after providing that a

majority should constitute "a quorum for the transaction of business" went on to provide further, that if no quorum be present at any meeting a less number might meet and adjourn from time to time until a quorum be present. The by-law in that case, because of its peculiar language, might be susceptible of an interpretation implying that a quorum must remain at all times, as was in fact argued to the Pennsylvania Supreme Court. Yet the court held otherwise. That ruling is of even greater persuasiveness here, where the language of the by-law is so framed as to be devoid of such suggested implication.

The case of *Leamy, et al., v. Sinaloa Exploration & Development Co., et al.*, 15 *Del. Ch.* 28, 130 *A.* 282, decided by this court, has been referred to by the solicitors for the complainant as pertinent here. That case is of no assistance for the reason that Corless, having a proxy, was present solely to protest the convening of the meeting on the ground of its illegality based on a lack of notice to stockholders, and he was in fact ejected from the meeting before voting took place. In this case the withdrawing members had no ground of lawful protest against the legality of the meeting, made no protest on any such ground, allowed themselves to be counted as present, one of them actively participated in the organization of the meeting and the other acquiesced. They withdrew only for the purpose of winning their slate of existing directors by securing to the incumbents holdover tenures of office. Thereby they hoped to defeat the will of the majority.

The petition will be dismissed.