GERTRUDE A. CAVENDER, KATHLEEN COHALAN, ALBERT R. FRANK, MARTIN A. NESS and VINCENT J. SCANLAN,

*vs.*

CURTISS-WRIGHT CORPORATION, a corporation of the State of Delaware, EDWIN J. BEINECKE, EDGAR S. BLOOM, WILLIAM F. CAREY, J. CHEEVER COWDIN, LOU R. CRANDALL, CHARLES A. DANA, ROBERT W. LEA, STUART R. REED, DANIEL M. SHEAFFER, GUY W. VAUGHAN, and JAMES C. WILLSON, as Directors of Curtiss-Wright Corporation; MRS. WALLACE K. HARRISON, T. ROLAND BERNER and WILLIAM P. DOYLE, as Members of a Common Stockholders' Committee; and HAROLD B. HOWARD and HOWARD DUANE, as purported Inspectors of Election.

*New Castle, July 8, 1948.*

*Hugh M. Morris* and *Alexander L. Nichols,* of the firm of Morris, Steel, Nichols & Arsht, for plaintiffs.

*Clarence A. Southerland* and *William Poole,* of the firm of Southerland, Berl & Potter, for defendant Curtiss-Wright Corporation, and its directors.

*Thomas Cooch,* of the firm of Marvel & Morford, and *T. Roland Berner,* of New York City, for Common Stockholders' Committee.

HARRINGTON, Chancellor: This is a proceeding under *Section* 31 of the *General Corporation Law* (*Section* 2063 *of the Revised Code of Delaware,* 1935) to review and determine the validity of the purported election of directors for Curtiss-Wright Corporation at the regular annual meeting of the stockholders held on April 21, 1948. That corporation, the directors alleged to have been elected, and the members of a common stockholders' committee, hereinafter designated as "the Berner committee", are defendants in the action.

The stockholders were duly notified that pursuant to the by-laws the annual meeting for the election of directors would be held at 11:30 A. M. on April 21 at the Delaware office of the corporation in the City of Wilmington. The Curtiss-Wright Corporation had two classes of stock outstanding—A stock and common stock, both of which had voting powers. Eleven directors were to be elected, and a management committee, consisting of Guy W. Vaughan, the president of the corporation, and others had solicited proxies from stockholders to be used for that purpose at the meeting. The Berner committee had likewise solicited proxies to be voted for the election of eight of the eleven directors to be elected.[1] Mr. Vaughan and the secretary of the corporation, together with other persons associated with the management, left New York on the Pennsylvania Railroad train at 8:30 A. M., on April 21, 1948. That train was scheduled to arrive in Wilmington in ample time for them to be present at the opening of the meeting but its arrival was delayed for more than an hour by a wreck on the road. About 11:30 A. M., Mr. Kay, one of the attorneys for the corporation, announced that Mr. Vaughan's train had been delayed and that he and his party would arrive in about a half hour. T. Roland Berner immediately undertook to organize the stockholders' meeting and nominated Mr. J. B. Ryan as chairman. Mr. Kay claimed that it was necessary to determine whether a quorum was present before any action could be taken. Mr. Berner stated that he had "taken the chair temporarily" in order that the presence of a quorum might be determined. He later stated "I am only acting until we have a chairman." Pursuant to a voice vote, apparently Mr. Berner and Mr. Kay were subsequently declared elected temporary co-chairman of the meeting,

---

[1] The solicitation by the Berner committee was based on the representation that should its slate be elected, the board would either declare a $7.00 dividend on the common stock or would call for tender of common stock for cancellation at $14.00 per share. Either course contemplated the withdrawal of approximately $50,000,000. from the corporate surplus.

but it is not clear that Mr. Kay ever acted. Objections were made from time to time, both by attorneys representing the corporation and by persons claiming to be stockholders, to the unreasonableness of any attempt to organize the meeting until the president of the corporation should arrive, but the effort continued. Some time prior to 12:15 one of the representatives of the management group suggested that any further proceedings be adjourned until that hour as Mr. Vaughan had telegraphed that he would arrive at about that time. Mr. Berner objected, stating that he cast 3,500,-000 votes against it, but put it to a voice vote and announced that it had been defeated 11 to 5. Finally Mr. Berner requested stockholders to "step up here" (presumably at the table) so that the secretary could determine whether a quorum was present, and some stockholders present gave their names and the number of shares owned by them to a stenographer who was taking notes of the proceedings. In listing that stock the statement appears in the stenographer's notes "J. B. Ryan, 3,500,000 shares, a member of the proxy committee." It appeared at the hearing, however, that the proxies of the Berner committee represented less than 400,000 shares. In order to determine the number of shares present at the meeting, in person or by proxy, the Berner group nominated Mr. Harold B. Howard and Mr. William E. Taylor inspectors of election, and Mr. Kay, on behalf of the management, nominated Mr. Harry N. Case and Mr. James H. Robertson, of Lybrand, Ross Bros. and Montgomery, an accounting firm. A stock vote by ballot was demanded and ballots were distributed. At 12:15 before all of the ballots had been collected and the result of the election had been announced, Mr. Vaughan and the management group arrived. Mr. Vaughan proceeded to conduct the meeting as the presiding officer, and Mr. Berner, while pushed aside, continued to claim that he had been elected chairman and had the right to preside. The Berner group went to one side of the room and Berner announced: "We are going ahead with our meeting. * * * We will elect

the majority of the Board because we have the votes. * * *"
The president appointed Mr. Case and Mr. Robertson inspectors and directed them to file their oaths. He then called for proxies and directed that they be filed with the inspectors. Mr. Berner called out "Disregard that. Do not file them at his meeting." The proxies held by the Berner committee were not produced and the number of shares represented by them was not disclosed until the hearing. After again calling for proxies, the president announced the order of business. The notice of the annual meeting and proof of mailing was presented by the secretary and the voting list was presented and declared open for examination. The inspectors appointed by Mr. Vaughan subsequently reported that there were present at the meeting, either in person or by proxy, 549,496 shares of Class A stock and 3,754,461 shares of common stock of the corporation out of a total of 8,384,000 shares of both classes of stock.

Under the bylaws one-third of the shares entitled to vote (2,794,606) constituted a quorum, and a quorum was declared to be present. The meeting then proceeded to the election of directors. Both the management slate of 11 directors and the Berner committee slate of 8 were nominated. The ballots were distributed, listing the 19 nominees. The vote was taken and the inspectors of election canvassed it and reported that each of the eleven directors on the management slate had received 4,297,313 votes and were duly elected. No votes were cast for the Berner committee nominees. A vote was thereupon taken upon the appointment of Lybrand, Ross Bros. and Montgomery to audit the books of the corporation and their employment was duly approved by a vote of 4,263,683 to 23,961. The chairman announced that as the required number of shares of each class of stock was not present in person or by proxy, the proposal to amend the certificate of incorporation would not be submitted for action. There followed some discussion of financial matters with various stockholders, and Mr. Vaughan pointed out that certain statements in the letter of

the Berner committee of April 14 to stockholders soliciting proxies were incorrect. At this point, Mr. Berner attempted to seize the voting list. After some further discussion of corporate affairs, at 2:10 P. M. on motion the meeting was adjourned *sine die*.

After Mr. Vaughan's arrival, Mr. Berner was named permanent chairman of the meeting conducted by him by a voice vote and appointed Howard Duane and Harold B. Howard inspectors and Mr. Leventritt secretary. Mr. Berner requested that proxies and a list of names and addresses of stockholders present in person be filed with the inspectors and later announced that all proxies had been filed. At 1:35 P.M. he stated "In order to determine if we have a quorum for a legally constituted meeting we will recess until May 7" and added that the meeting would be held in the same room at 11:30 A.M. The management proxies were then in the office of the Corporation Trust Company, in proximity to the meeting, and Mr. Vaughan, a member of the proxy committee, was present.

At the hearing Mr. Berner conceded that the organization perfected by him prior to Mr. Vaughan's arrival was merely temporary.

One of the principal reasons for calling the stockholders' meeting of April 21, 1948, was to elect directors for the ensuing year. There was not only a quorum present when the election took place, but the nominees on the management ticket—Edwin J. Beinecke, Edgar S. Bloom, William F. Carey, J. Cheever Cowdin, Lou R. Crandall, Charles A. Dana, Robert W. Lea, Stuart R. Reed, Daniel M. Sheaffer, Guy W. Vaughan and James C. Willson—received the votes of 4,297,313 shares of stock, while the other eight nominees received no votes.

The Berner group, however, challenge the validity of the election on the ground that the meeting was illegal. They say that the stockholders met at 11:30 A.M. and ultimately elected Mr. Berner temporary co-chairman, and that Mr. Vaughan, on his arrival at 12:15, was bound to recog-

nize that organization and Mr. Berner's right to preside. Having refused to do this, they claim that the meeting which they continued to conduct on one side of the room, with a small minority of the stockholders, was the legal meeting.

The plaintiffs claim, however, that "the election, or purported election, of a temporary chairman or temporary co-chairman could not divest the right of the legal chairman to preside upon his arrival since no permanent organization had been effected and no definitive action of any sort had been taken." They, therefore, conclude that the directors were legally elected. I am in accord with that contention.

Article 11, Section 7, of the bylaws relating to the organization of stockholders' meetings, provides as follows:

"Section 7. ORGANIZATION. The President of the Corporation or, in his absence, the Senior Vice-President, or in the absence of both the President and the Senior Vice-President, any Vice President present, shall call meetings of the stockholders to order and shall act as Chairman thereof. In the absence of the President and of every Vice President, the holders of a majority in interest of the stock present in person or by Proxy and entitled to vote, may elect any person present to act as Chairman of the meeting. The Secretary, or, in his absence, an Assistant Secretary, shall act as secretary at all meetings of the stockholders. In the absence from any such meeting of the Secretary and the Assistant Secretary or Secretaries, the Chairman may appoint any person present to act as secretary of the meeting. Such person shall be sworn to the faithful discharge of his duties as such secretary of the meeting before entering thereon."

Article 11, Section 6, of the bylaws relating to a quorum, provides in part as follows:

"Section 6. QUORUM. At each meeting of the stockholders, the holders of not less than one-third of the issued and outstanding stock of the Corporation present either in person or by proxy and entitled to vote at such meeting shall constitute a quorum except where otherwise provided by law or by the Certificate of Incorporation or these by-laws. In the absence of a quorum, the stockholders of the Corporation present in person or by proxy and entitled to vote, by majority vote, or, in the absence of all the stockholders, any officer entitled to preside or act as Secretary at such meeting, shall have the power to adjourn the meeting from time to time until stockholders holding the requisite amount of stock shall be present or represented."

Article 11, Section 10, of the bylaws, provides that the inspectors of election "shall be appointed by the chairman" of the meeting.

A chairman was nominated in the first instance, but no action was taken on the nomination. The presence of a quorum having been questioned, Mr. Berner was ultimately elected temporary chairman or temporary co-chairman in order that that question might be determined. His election was by a voice vote but no stock vote seems to have been demanded. Inspectors were nominated by both groups. A vote by ballot was demanded and they were distributed, but before all of them had been collected Mr. Vaughan arrived and proceeded to act as chairman of the meeting, though over Mr. Berner's protest. No quorum was present until Mr. Vaughan's arrival so no business could have been transacted or directors elected by the so-called Berner meeting. See *Hexter v. Columbia Baking Co.*, 16 *Del. Ch.* 263, 145 *A.* 115. There could have been only an adjournment, thereby postponing the election, and this seems to have been the real purpose of the Berner group.

The temporary proceedings prior to Mr. Vaughan's arrival do not come within the meaning of the bylaw provision relating to the election of a chairman "in the absence of the President."

Other arguments were made by the plaintiffs in support of their contention that the directors were legally elected, but it is unnecessary to consider them.

*Section* 31 of the *General Corporation Law* is a summary proceeding, and in order to end any possible confusion growing out of the contentions in this case an appropriate decree sustaining the validity of the election of directors was entered shortly after the hearing. Pursuant to the prayer of the complaint, the common stockholders' committee was also permanently enjoined from holding any purported adjourned stockholders' meeting.

No further decree was deemed necessary.