## MORTON *et al. v.* TALMADGE *et al.*

1. A by-law which requires that a mutual insurance company "shall hold its annual meeting on the first Tuesday in June of each year at 11 o'clock a. m. at the office of the company at Athens. Fifteen members shall constitute a quorum for business," is not void because in conflict with section 2 of the charter of the company, embodied in the act of the General Assembly approved December 17, 1902 (Acts 1902, p. 718), which provides that "at all meetings of said corporation every matter shall be decided by a majority of votes, each member holding a policy for one year or longer being allowed one vote; and if his policy exceed one thousand dollars, an additional vote for every thousand; with the right of voting by proxy." On the other hand, the by-law quoted is a reasonable provision antecedent to the annual election of officers, for the purpose of ascertaining the genuineness and validity of proxies which may be authorized by absent members; and the enactment of this by-law is authorized by the provisions of section 4 of the act above cited, in which it is declared that "said corporation shall also have power to have and use a common seal, and to make such rules and by-laws as may be thought necessary, not inconsistent with the laws of this State." To construe the language of the foregoing by-law, "Fifteen members shall constitute a quorum for business," to refer to or include proxies of absent members would be to reduce the by-law to an absurdity and destroy it.

2. "As in the case of statutes, so in the case of by-laws, the courts will, in construing them, where two interpretations are possible, one of which will save them and make them valid and the other of which will render them invalid, so interpret them as to make them valid, since the purpose of violating the law of the land will not be imputed to their authors except where necessary." 14 C. J. 350, § 439.

3. "To constitute a valid corporate meeting a quorum must be present, and action of the stockholders or members at a meeting at which less than the required number of members are present . . is void." 14 C. J. 895, § 1377.

4. Applying the foregoing principles, the court erred in dismissing the petition in this case upon general demurrer.

No. 6169. JULY 12, 1928.

Petition for quo warranto. Before Judge Perryman. Clarke superior court. June 14, 1927.

*Green & Michael* and *Callaway & Howard,* for plaintiffs.

*Horace M. Holden, Little, Powell, Smith & Goldstein,* and *Erwin, Erwin & Nix,* for defendants.

RUSSELL, C. J. John White Morton and E. R. Hodgson Jr., as relators, filed an information in the nature of a quo warranto against J. E. Talmadge Jr., Hugh H. Gordon Jr., and C. H. Brand, as respondents, seeking to determine by what right they assume to act as directors of the Southern Mutual Insurance Company, a Georgia corporation with its principal office at Athens, Clarke County,

Georgia. The petition alleged the disqualification of Honorable Blanton Fortson, judge of the Western Circuit, by reason of the fact that he was a policyholder and member of the Southern Mutual Insurance Company as well as a director, and set up as additional ground of disqualification the fact that the judge participated in what is denominated as "a certain pretended election of a board of directors for said corporation on the seventh day of June, 1927." The petition therefore was addressed to the superior court of Clarke County, "and the Honorable C. J. Perryman, judge presiding therein."

After mature consideration of the record in this case and in view of the conclusion reached by the court, it is not necessary to state in detail all of the allegations of the petition. Judge Perryman, by an order passed at chambers on June 17, 1927, assumed jurisdiction and issued a rule nisi calling upon the respondents to show cause, on June 25, 1927, why the prayers of the relators should not be granted. The respondents demurred to the petition; whereupon the petitioners filed two amendments, and the respondents thereafter demurred to the petition as amended. It appearing from the answer that the allegations of the petition were denied, and that the regular session of the superior court of Clarke County would be held on the first Monday in July, 1927, it was ordered that the "hearing be had in said court on Wednesday, July 13, 1927," and "that the rights of the respondents under the demurrer filed be preserved, and that said demurrer shall be heard at said time and place as above set." At the hearing the court sustained the general demurrers and dismissed the petition, and the plaintiffs excepted. The special demurrers were not passed upon, and this fact obviates the necessity of considering them. The general demurrers are based upon the ground, as quoted, that the "petition sets forth no cause of action, in that it is predicated on the eleventh by-law of the Southern Mutual Insurance Company as construed by the relators, and that said eleventh by-law if so construed would be null and void because in conflict with the second section of the charter of the company in the following respect: Said second section in effect provides that at all meetings of the corporation every matter shall be decided by a majority of votes in person or by proxy, meaning a majority of the votes so cast at every meeting, and the said eleventh by-law if construed as claimed by the relators would set up a limitation on this

right, contrary to the charter, said limitation being that a majority of the votes cast in person or by proxy could not decide all matters as provided by the charter unless fifteen members were present in person. Said petition shows a meeting and an election of the respondents, and attacks said election solely upon the claim that a valid by-law required fifteen members to be present in person, to constitute a quorum. The respondents respectfully point out, in connection with this ground of the demurrer, that said provision of the charter is unqualified, and that an effort to qualify the same by by-law conflicts therewith and is void and of no effect."

It appears, from an inspection of the record, that only one question is presented for review. The solution of the controversy depends upon the force and effect of the eleventh by-law of the Southern Mutual Insurance Company, the plaintiffs contending that under the facts stated in the petition, which for the purposes of demurrer must be considered as true, the alleged election of the respondents to the position of directors is void for the reason that a quorum qualified to transact business and especially the annual election of officers was not present at the alleged meeting, and therefore the duty of electing officers could not be performed, with the consequence that John White Morton Jr., E. H. Hodgson Jr., and C. M. Snelling as directors continue in office until there is a legal election of successors to them. The eleventh by-law reads as follows: "The company shall hold its annual meeting on the first Tuesday in June of each year, at 11 a. m., at the office of the company at Athens. Fifteen members shall constitute a quorum for business." Also included in the eleventh paragraph of the by-laws is a provision for the call of a special meeting by any fifty members; but inasmuch as it is admitted that this was the regular annual meeting and not a special meeting, and it does not appear that any of the provisions relating to a special meeting were complied with, the second portion of the eleventh paragraph of the by-laws is foreign to a decision of the case now before us. The respondents contend that the construction placed upon the eleventh paragraph by the petitioners would bring it in conflict with the provisions of the charter, and rely upon the well-settled principle that any attempt to pass a by-law contradictory of or conflicting with a provision of a charter avoids the by-law. In the brief of the learned counsel for the respondents it is said that there is no conflict be-

tween the provision in the charter and the eleventh paragraph of the by-laws; and we are of the opinion that this statement is correct. It is argued, however, that to give the eleventh paragraph the meaning and significance which the ordinary definition of its terms would import would necessarily make a conflict between the by-law and the charter, with the result that the by-law would become ineffectual. It is the insistence of the defendants that the words, "Fifteen members shall constitute a quorum for business," define a quorum as being properly constituted, whether the members are personally present or not, and that inasmuch as the charter gives every member the right to vote by proxy, a regularly constituted quorum would be present if fifteen or more members had each regularly appointed proxies fully authorized to vote for the election of officers or other business at the meeting. In this latter contention this court can not concur. There is no conflict between the provision of the charter providing for the right of a policyholder to vote by proxy if it be for any reason impossible or inconvenient for him to attend the meeting, and the provision of the by-law which says that there will be no meeting at which voting can be indulged in until as many as fifteen of the policyholders are present to see that there is a legal election. The fixing of a number which shall constitute a quorum of any deliberative body, where not specifically provided for, is a matter which may be determined by the vote of those who are entitled to cast votes; but the determination of what number shall constitute a quorum and the compliance with a requirement prescribing qualification either as to number or otherwise of those whose presence may be essential to see that business is properly and legally conducted in the interest of the body is another and altogether different thing. In legislative bodies members may be admitted upon certificates; and if a majority of them be present a quorum is present, though it may be that thereafter by contest a number of those who first constituted a quorum will be deprived not only of their votes but of any participation in the further proceedings of the assemblage.

There is nothing in the charter of the Southern Mutual Insurance Company which prevents the corporation from determining what number of members shall be present to constitute a quorum and see that the thousands of members who send proxies have really properly executed those powers of attorney, to see that the same

member has not sent more than one proxy, to make provision for proper count of the ballots cast by proxy, and to officially declare as living witnesses to the entire membership of the corporation that the tabulation evidenced the correct result of the balloting. If the theory of the counsel for defendants is correct, it would be perfectly possible for the secretary and agents of the Southern Mutual Insurance Company to obtain upon request the proxies from several thousand of the policyholders, which the president and secretary could canvass and declare the result, with the consequence that the entire government of the company would be absolutely in the hands of either one or both of these officers. If it is not necessary to have fifteen members present, as the by-law requires, and if the by-law conflicts with the charter because the personal presence of policyholders is not essential to the validity of an election, not a single officer of the company or a single policyholder need be present in person, but the president of the company could direct some employee to take the proxies and count them and thereafter declare the result of the election. If there were a by-law that required that a majority or even any considerable number or any one of the policyholders should be prevented from voting because he did not care to attend the meeting in person, the question raised by counsel for the defendants in error would become material and very pertinent. Inasmuch, however, as the first paragraph of the by-laws provides for a board of "fifteen members, . . who shall be elected at the annual meeting of the company, and continue in office for one year, and until others are elected in their places," and inasmuch as it would be presumed that the directors charged with the management of this great insurance company would be personally present at the selection of their successors, it is not without significance that the number used in the eleventh by-law is identical with the provision that "fifteen members" shall constitute the board of directors. It can not be said that this is an extra large number in a company in which by demurrer it is admitted, as alleged in the petition, that there are between 18,000 and 20,000 members in the State of Georgia. So we are of the opinion, that, without any conflict or impingement upon the charter rights of any policyholder who desires to vote by proxy, the company had the right to pass the by-law that a meeting could not be held for as important a matter as the election of officers, unless a quorum constituted of as small a number

as fifteen was personally present to oversee and guarantee the correctness of the results in behalf of thousands of policyholders who have never been and never will be present at a meeting. We have not been cited to any authority which indicates or suggests the slightest conflict between the right of any organization to designate the number of its members which shall constitute a quorum for a meeting at which voting shall be done, and the grant of a right to absent members to cast their votes by proxy. In the very nature of things there can not be such conflict.

It appears from the petition that it has been the invariable custom in all past history of the company not to hold a meeting until fifteen members were personally present, and that on the occasion of the election now under review the officers of the company waited and sent out until sixteen persons came in; but it now appears from the allegations of the petition that three of these were not members of the company or representatives of policyholders. Moreover the argument of counsel for the defendants virtually concedes that there were less than fifteen policyholders present, because the entire argument is directed to the point that the by-law is void because in conflict with the charter, if it be construed that the personal presence of fifteen members is intended. It is often reiterated in the brief that the petition does not expressly allege that there were not fifteen members present in person and by proxy; it being apparently conceded by the plaintiffs that a majority of the entire body of policyholders was present by proxy and entitled to vote, provided the meeting could be opened after the properly qualified quorum was present. "Fifteen members shall constitute a quorum for business," as applied to the annual meeting which is to be held on the first Tuesday in June of each year, is admitted by the defendants to mean that fifteen members must be present; but they contend that that means fifteen absent members as well as fifteen members present, provided they have sent proxies. As we have already said, we can not concur in this view, because, if the company has the right to fix any number at all as a quorum, it would be discretionary with them; but that the number fixed must be personally present can not be questioned under the plain language employed in the by-law, for the reason that if this by-law is void and only a proxy is necessary to constitute presence, the question immediately arises: who is to determine whether the papers before him are proxies; who is

40

to know whether they are policyholders; who is to determine whether the signatures are genuine; who is to determine whether the attestation is a forgery or the real signature of the attesting officer? It needs no argument to show that it is absolutely necessary that some member of the corporation must be personally present; somebody who has at least some scintilla of interest in the company and its welfare; some one who has somewhat of a knowledge of who its policyholders are; some one whose name and business qualifications will enable him to be responsible for the result he announces in this annual election of officers of a company which has in force over $50,000,000 of insurance affecting citizens of this State. The argument of the respondents amounts simply to this: that if fifteen is not a proper number, and if· no number can be designated without conflicting with the right of policyholders to vote by proxy, then the presence of a single policyholder at the annual election is unnecessary, provided all the policyholders send proxies; then the votes may be cast and counted by any one who has a proxy. To our minds it is reasonably certain that the legislature, in granting the charter of the Southern Mutual Insurance Company and giving very properly to policyholders to whom it is impossible or even inconvenient to attend meetings the right to be represented by proxy, never contemplated that it would be possible for a meeting to be held without the personal presence of at least as small a number as fifteen out of as many as 18,000 and sometimes 20,000 policyholders.

It is admitted in the brief of counsel for the respondents that in Clark *v.* Manufacturers Fire Ins. Co., 130 Ind. 332 (30· N. E. 212), it was held that the term "member" is synonymous with "policyholder," and it is conceded throughout the argument that this definition is not incorrect, the argument being that to say that a member, that is, a policyholder, must be personally present, gives a strained and unusual construction to the phraseology employed in the eleventh paragraph of the by-law. The right to give a proxy to cast a vote provides for a case of absence of the policyholder, but it does not thereby concern or affect in any way the rights of a member to vote who does not choose to procure a proxy. Therefore, when the word "member" is used in the by-law, it must necessarily refer to the personal presence of a policyholder. The word "member" as used in the by-law means a policyholder who is personally present. It was held, in Butler *v.* Hopper, 4 Fed. Cases, 904, 905,

that "Member of Congress" is a phrase synonymous with the phrase "Representative in Congress." The word "member" refers to an individual, not to the written authority, the piece of paper, that authorizes one person to act for another. Member or shareholder, as used in speaking of members or shareholders of a company or corporation, includes even a person who has agreed to become a member; and yet such a person could not give a proxy to vote, although he might be pecuniarily liable as if he had already become a shareholder. Burges v. Seligman, 107 U. S. 20 (2 Sup. Ct. 10, 27 L. ed. 359). The word "quorum" has been defined, in State v. Trustees, 20 Ohio St. 293, as follows: "A quorum is such a number of members of a body as is competent to transact business in the absence of other members." In Heiskell v. City of Baltimore, 65 Md. 125 (4 Atl. 116, 57 Am. R. 308), the word "quorum," which we have already defined as a necessary provision for the personal presence of some members the number of which may properly be fixed in a by-law, is explained as follows: "The quorum of a body may be defined to be that number of the body which, when assembled in their proper places, will enable them to transact their proper business, or, in other words, that number that makes the lawful body, and gives them power to pass a law or ordinance." At common law there could be no voting by proxy, and there could be no quorum by proxy; and we think the construction which upholds a by-law that "fifteen members shall constitute a quorum for business" means fifteen members in person is much to be preferred to one which would permit fifteen proxies transmitted by absent members to constitute a quorum, when we consider that the General Assembly passed the charter with at least a general understanding of the principles of the common law and with the knowledge that the common law, unless and until changed by statute, still prevails in this Commonwealth. The by-law is declaratory of the common law, except to add the exact number of persons that must assemble to constitute a quorum; whereas under the common law generally a majority of the members is necessary to constitute a legal body for the transaction of business. It will be readily conceded that by-law 11 will be so construed as to conform to the charter. Any construction which would place it in conflict with or in contradiction of the charter would render the by-law void.

Counsel for the respondents rely upon the case of Hill v. Town,

172 Mich. 508 (138 N. W. 334, 42 L. R. A. (N. S.) 799), in which it was held that "the stockholders holding a majority of the stock at any meeting of the stockholders shall be capable of transacting the business of the meeting," but the point now before us was not in any way involved in that case. There was no conflict between persons present who were members on the one hand or proxies on the other. The point was whether or not, in the absence of any provision fixing the number who should constitute a quorum, it was not required that a majority of the stock must be represented; and the Supreme Court of Michigan, following the common law, held that a majority of the stock must be represented. If the question involved in this case were whether, after the meeting had been properly organized with a proper quorum present, the one side of these contestants or the other had been elected or defeated, and the point were raised as to whether a majority of the stock was represented, we should undoubtedly hold just as the Michigan court did, and decide that the candidates for directors who received the vote of a majority of the stock, even if it came altogether from proxies properly executed, were entitled to the election. In the Michigan case quorum was to be determined by the amount of *stock,* and not by the number of *persons* present; and in ascertaining the amount of stock the court merely held that the stock represented by proxy could be counted as well as stock represented by stockholders. It is readily to be seen that the point upon which the decision turned in the Michigan case is not at all involved in the case at bar. But as to whether the requirement of the by-law is in conflict with the provision of the charter or whether it is merely a salutary regulation antecedent to the casting of any ballots, in person or by proxy, the opinion of the Michigan court in the case cited contains the following language: "All of the authorities agree that the requirements of a statutory quorum are mandatory. It is urged that, under such a construction, a majority of the stockholders may absent themselves from meetings and prevent the transaction of any business by the stockholders, and continue indefinitely their control of corporate affairs. This is met by the reply that there could be no reason or inducement why a majority in interest of the stockholders should absent themselves from such meetings, when, by their presence and voting their stock, they could control the affairs. And a conclusive answer is that a minority of the stockholders would have

the right to enforce the attendance of stockholders sufficient to make
the required quorum necessary to transact business, and to permit
a minority to exercise the right of cumulative voting, by proper
proceedings upon a sufficient showing in a court of competent juris-
diction."

For the reasons so cogently stated in the Michigan case from
which we have just quoted, we can not concur in the view of coun-
sel for the respondents that if fifteen members in person are re-
quired to constitute a quorum, then any number could be required,
that members would be required to come from all over the State
of Georgia at loss of time and inconvenience. One of the tests of
the validity of a by-law is that it shall be reasonable. In our opin-
ion it is not unreasonable to require the presence of fifteen mem-
bers of a body of 20,000 policyholders. Another fact which shows
that the by-law is not unreasonable or in conflict with the provision
of the charter that policyholders may vote by proxy is that under
the charter and by-laws of the Southern Mutual Insurance Com-
pany, though fifteen persons each holding a policy for $1000 may
be present, they would have only one vote each, making a total of
fifteen votes; and yet if another policyholder were present who had
policies aggregating $20,000, the latter would have twenty votes.
This seems to us to present an additional argument in support of
the validity of the by-law and the construction which we have
placed upon it that the words "fifteen members" mean fifteen per-
sons who are policyholders personally present. Otherwise it could
well be said that the presence of one having twenty votes would
be at least as good and sufficient for all the purposes of constituting
a quorum as the presence of fifteen men who had only one vote
each. In the case of Keogh Inc., 183 N. Y. Supp. 408, cited by
the respondents, in which the corporation was operating under a
statute, it was held that there was a conflict between the statute
law and the by-law, because there was a difference in the amount
of stock required. The Keogh case differs from the case at bar,
for the reason that the eleventh paragraph of the by-laws merely
requires a certain number of persons who are qualified by their in-
terest as policyholders to be present, and then an election may be
held which would be determined by the size or number of policies,
irrespective of the number of persons who may hold these policies.

For the reasons above stated we are of the opinion that the trial

judge erred in sustaining the general demurrer and dismissing the petition.

*Judgment reversed.　All the Justices concur, except Gilbert, J., disqualified.*