# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## LEVISA OIL CORPORATION, ET AL. V. MARY W. QUIGLEY.

April 22, 1977.

Record No. 760417.

Present, All the Justices.

*Roger W. Mullins (Guy W. Perkins; McClintock and Mullins; Katz, Kantor, Katz, Perkins and Cameron,* on briefs), for appellants.

*John C. Lowe (Lowe and Gordon, Ltd.,* on brief), for appellee.

HARRISON, J., delivered the opinion of the court.

We consider here the effect of a withdrawal of stockholders holding a majority of the stock from an annual stockholders' meeting. The court below held that a quorum was broken by such withdrawal and that no business could thereafter be conducted by the remaining stockholders.

Levisa Oil Corporation was organized in 1946 to conduct a general mercantile business, and its principal office is located in Grundy, Virginia. On January 1, 1973, the shareholders of the corporation, and the number of shares of stock held by each, were: C. J. Carlton — 1750 shares; Mary Quigley — 1750 shares; James Chalfa — 150 shares; R. W. Gibson — 50 shares; and E.

N. Harris — 5 shares. Between January 1, 1973 and March 21, 1973, C. J. Carlton transferred 15 shares of his stock as follows: to Tom Williams — 5 shares; to T. G. Osborne — 5 shares; and to his wife, Shirley Carlton — 5 shares. The directors of the corporation on April 1, 1973 were C. J. Carlton, Mrs. Quigley, Chalfa and Harris.

The annual stockholders' meeting of the corporation was held on April 2, 1973, with all stockholders present in person. C. J. Carlton served as chairman of the meeting with Harris as its secretary. During the meeting, and when it became appropriate to elect or reelect a board of directors, Gibson made a motion that the four incumbent directors be reelected for the ensuing year. Osborne sought to amend the motion to include Gibson as a director, thereby increasing the membership of the board from four to five. At this point Chalfa made a "Motion that the By-Laws of Levisa Oil Corporation be amended to provide that directors will be elected by the stockholders without stock ownership in the corporation being a prerequisite and voting as stated in the By-Laws will be continued for a total of five directors".[1] Chalfa's motion, which was seconded by Mrs. Quigley, was ruled out of order by the chairman. Chalfa then made a motion to adjourn the meeting, which was seconded by Mrs. Quigley, and it was also ruled out of order by the chairman. At this point Mrs. Quigley and Chalfa withdrew from the meeting. The minutes reflect that Chalfa's motions to amend the bylaws and to adjourn the meeting were not recognized by the chairman.

While it is not pertinent to our decision, the record reflects that following the withdrawal of Mrs. Quigley and Chalfa from the meeting, and notwithstanding the absence of a quorum, the remaining minority stockholders proceeded to elect C. J. Carlton, Mrs. Quigley, Gibson, Harris and Chalfa as directors. Thereafter directors Carlton, Harris and Gibson held a meeting and decided to offer to the stockholder making the highest bid therefor any and all such shares of the treasury stock of the corporation "as they may wish to bid on". Subsequently Mrs. Shirley Carlton became the purchaser of 250 shares of treasury stock at $58 per

---

[1] Article VII, Section 1 of the bylaws of the Levisa Oil Corporation specifically provides that: "Amendments to these bylaws may be made, by a vote of the stockholders representing a majority of all the stock issued and outstanding, at any annual stockholders' meeting."

share. This purchase resulted in Mrs. Quigley and Chalfa losing the majority interest in the corporation. Although Mrs. Quigley attended the sale of the stock and bid thereon, the sale was conducted over her protest and with the knowledge that it would be contested.

This action was brought by Mrs. Quigley against the corporation and all its stockholders, other than Chalfa, for the purpose of invalidating the election of directors at the April 2, 1973 stockholders' meeting and all actions thereafter taken by these directors. The court granted the relief prayed for by appellee. It held that the quorum of the annual stockholders' meeting of Levisa was lost by the departure of Mrs. Quigley and Chalfa from the meeting, and that, as a consequence, all business conducted thereafter was of no legal effect. It decreed that the nomination and election of the five directors of the corporation were improper and unlawful and that action taken thereafter by the directors, including specifically the sale of the treasury stock, was likewise unauthorized and illegal.

It appears that although the bylaws of the corporation provided for five directors, the stockholders had customarily elected only four so that a balance of power between the majority and minority stockholders could be maintained. Mrs. Quigley says that Mr. Carlton attempted to manipulate the annual stockholders' meeting on April 2, 1973 for his own gain, or for that of his family or confederates, and to the frustration of the voting strength of the majority stockholders. She contends that the transfer of five shares of stock each to Williams, Osborne and Mrs. Carlton was a part of a maneuver to elect a fifth director who would be allied with Carlton, and who would thereafter cooperate to the end that a sufficient number of shares of treasury stock be sold, thereby transferring the controlling interest of the corporation from Quigley and Chalfa to C. J. Carlton and his wife and associates. Mrs. Quigley alleges that the refusal of C. J. Carlton, who was chairman of the meeting, to recognize Chalfa or to permit any consideration of the motions made by him to amend the bylaws or to adjourn the meeting was a part of the overall scheme to wrest control of the corporation from Mrs. Quigley and Chalfa.

It is unnecessary that we discuss or consider the motives which activated the motion made by Carlton's associate, or whether the action by the chairman on Chalfa's motions

accorded with Robert's Rules of Order. Our decision in this case is controlled by the provisions of Code §§ 13.1-31 and 13.1-24 and Article III, Section 7 of the bylaws of Levisa.

Code § 13.1-31, which concerns "quorum of stockholders", provides, in pertinent part, as follows:

> "Unless otherwise provided in the articles of incorporation, a majority of the shares entitled to vote, represented in person or by proxy, shall constitute a quorum at a meeting of stockholders, . . . If a quorum is present, the affirmative vote of the majority of the shares represented at the meeting and entitled to vote on the subject matter shall be the act of the stockholders, . . . . Less than a quorum may adjourn."

Code § 13.1-24 provides generally for the adoption of the bylaws of a corporation and concludes: "The bylaws may contain any provisions for the regulation and management of the affairs of the corporation not inconsistent with law or the articles of incorporation."

Article III of the bylaws of Levisa determines the manner in which stockholders' meetings shall be held and conducted. Section 7 of the Article reads as follows:

> "A quorum for the transaction of business at any such meeting shall consist of a number of members representing a majority of the shares of stock issued and outstanding; but the stockholders present at any meeting, though less than a quorum, may adjourn the meeting to a future time."

There is nothing in the articles of incorporation of Levisa which permits less than a majority of the shares of the corporation to constitute a quorum at a stockholders' meeting. The bylaws specifically provide that for the transaction of business at any such meeting a quorum shall consist of stockholders representing a majority of the shares of stock issued and outstanding. No business can be transacted in the absence of such a quorum. The only action that can be taken by stockholders constituting less than a quorum is to adjourn the meeting to a future time.

Appellants argue that since the April 2, 1973 meeting had been properly called and organized, with a quorum present, that such quorum was not broken by the subsequent withdrawal from the meeting of a majority of the shareholders. They rely, in part,

upon 5 Fletcher, Cyclopedia of the Law of Private Corporations, § 2013.1 (rev. perm. ed. 1976), where it is said:

"According to the modern and better view, where a quorum is once present to organize a shareholders' meeting, it is not broken by the subsequent withdrawal of a part or faction of the shareholders, whether present in person or by their proxies, although there is authority to the contrary which holds that where there was not a quorum present at the time the action took place such action is not valid." [footnotes omitted]

Appellants also cite *Hexter* v. *Columbia Baking Co.*, 16 Del. Ch. 263, 145 A. 115 (1929), and *Commonwealth* v. *Vandegrift*, 232 Pa. 53, 81 A. 153 (1911). Their reliance on *Hexter* is misplaced for the court there was concerned with a stockholder's unjustified withdrawal when it said:

"But when a quorum is once present, the meeting organized and transacting business however little, there must under the authorities be some *justifiable reason* for withdrawal by any one to break the quorum, before such withdrawal can be allowed the effect of destroying the meeting. It has in substance been held by courts and stated by textwriters, that if the withdrawing stockholders are animated by a purpose *solely* to destroy the meeting by breaking a quorum *because of whim, caprice or chagrin*, the law will consider their action as unavailing and will permit the meeting to proceed." 16 Del. Ch. at 268, 145 A. at 117 (Emphasis added).

Significantly, the court in *Hexter* commented on this language found in a Delaware statute — "a quorum for the transaction of business". The court said: "Such language as that might well be construed as meaning that the quorum must be present at all times when business is transacted. But there is no such strength of implication discoverable in the defendant corporation's by-law." 16 Del. Ch. at 267, 145 A. at 117. In the case under review the precise language in Article III, Section 7 is "a quorum for the transaction of business".

In *Vandegrift*, the court was also concerned with stockholders who withdraw capriciously and without just cause. Further, appellee points to a Pennsylvania statute which specifically provides that stockholders present at a meeting that has been

duly organized can continue to do business until adjournment notwithstanding the withdrawal of enough stockholders to leave less than a quorum. Pa. Stat. Ann., tit. 15, § 1503(2) [formerly § 2852(2)] (Purdon).

We find nothing in the record to indicate that Mrs. Quigley and Chalfa withdrew from the meeting because of whim, caprice or chagrin. These two individuals owned a majority of the stock in Levisa. They owned the controlling interest and as such were entitled to control. While appellants argue that Mrs. Quigley and Chalfa should have remained in the meeting and simply voted against the election of directors, there is no indication that either one had any knowledge of corporate law or was versed in the intricacies of parliamentary procedure. They discerned that notwithstanding they owned a majority of the stock of the corporation, a maneuver was being attempted to divest them of control. Their decision to withdraw from the meeting was a defensive action which they deemed necessary to protect their majority interest in the corporation. While it was obviously self-serving it was not an improper action or one that could be termed unjustified. In any event it was action permissible under the bylaws of Levisa which expressly stipulate that business at its stockholders' meeting can be transacted only when a quorum of the capital stock is represented. The fact that appellee may have followed another course of action to protect her interests is of no moment.

In *Textron, Inc.* v. *American Woolen Co.*, 122 F. Supp. 305 (D. Mass. 1954), the defendant, citing *Hexter* and *Vandegrift* as authorities, also claimed that "once a quorum has been established at a stockholders' meeting the meeting can continue irrespective of the number of subsequent withdrawals". Responding to this argument, the court said:

"I have grave doubts as to the soundness of those decisions. Those courts themselves admit that under ordinary parliamentary law a quorum must remain present throughout.[2] They proceed on the basis that stockholders' meetings are required, and that accordingly more lenient principles should apply. This seems a questionable doctrine,

---

[2] It appears that parliamentary procedure accords with the *Textron, Inc.* approach. Robert's Rules of Order § 39, at 296-97 (rev. ed. 1970).

and one difficult of delineation. It would seem preferable to lower the quota requirement itself than to propose artificial means of circumventing it." 122 F.Supp. at 311. [footnote added]

*See also Beale* v. *Columbia Securities Co.*, 256 Mass. 326, 152 N.E. 703 (1926).

*Bridgers* v. *Staton*, 150 N.C. 216, 219, 63 S.E. 892, 894 (1909), involved a meeting for the election of corporate directors which was initially attended by a sufficient number of stockholders to constitute a quorum. There the defendants withdrew from the meeting and the plaintiffs' shares did not constitute a majority of the stock issued and outstanding. The court, in holding that no election could be conducted after "the breaking of the quorum", further said: "It makes no difference whether the adjournment was illegally voted or not, since the tangible fact of the withdrawal of the defendants in law put an end to the meeting." In *Morton* v. *Talmadge*, 166 Ga. 620, 144 S.E. 111 (1928), the court quoted with approval from *Hill* v. *Town*, 172 Mich. 508, 138 N. W. 334 (1912), as follows:

> " 'All of the authorities agree that the requirements of a statutory quorum are mandatory. It is urged that, under such a construction, a majority of the stockholders may absent themselves from meetings, and prevent the transaction of any business by the stockholders, and continue indefinitely their control of corporate affairs. This is met by the reply that there could be no reason or inducement why a majority in interest of the stockholders should absent themselves from such meetings, when, by their presence and voting their stock, they could control the affairs. . . .' " 166 Ga. at 628, 144 S.E. at 115.

We conclude that under the bylaws adopted by Levisa Oil Corporation it was necessary for the transaction of business at its annual stockholders' meeting for stockholders representing a majority of the shares of stock issued and outstanding to be present. When Mrs. Quigley and Chalfa withdrew from the meeting there no longer existed a quorum, and any action thereafter taken by the stockholders, other than to adjourn the meeting to a future time, was void and of no effect. Having so decided, we need not consider other assignments of error.

The judgment of the lower court will be in all respects

*Affirmed.*