Present:  Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and Lemons, JJ., and Russell, S.J.

JOSEPH JAKABCIN, ET AL.

v.  Record No. 050722

TOWN OF FRONT ROYAL, ET AL.

OPINION BY
SENIOR JUSTICE CHARLES S. RUSSELL
April 21, 2006

FROM THE CIRCUIT COURT OF WARREN COUNTY
James V. Lane, Judge

In this case of first impression in Virginia, we must determine whether a local governing body may convene and conduct a valid meeting with less than a quorum of its members physically present, when absent members had disqualified themselves from acting pursuant to the State and Local Government Conflict of Interests Act, Code §§ 2.2-3100 et seq. (COIA).

*Facts and proceedings*

The essential facts are undisputed.  In 2002, Wal-Mart Real Estate Business Trust (Wal-Mart) was the contract purchaser of a 121-acre parcel of land in the Riverton area of the Town of Front Royal, lying between the North and South Forks of the Shenandoah River.  The land was zoned R-1, for low-density residential use.  Wal-Mart, in August, 2002, applied to the town for amendments to the zoning ordinance to permit commercial use of the land.  Wal-Mart also requested special use permits to allow the construction and operation of a store on the property.  The applications ultimately came

before the Town Council, which duly advertised them for a public hearing, to take place on June 9, 2003.

The Town Council consists of six members and four members are necessary to constitute a quorum. Code § 15.2-1415 and § 13 of the Town Charter provide that a majority of the members shall constitute a quorum. Further, under provisions of the Town's Municipal Code and Code § 15.2-2285, before the Town Council could adopt amendments to the zoning ordinance, it was required, after proper advertisement, to hold two successive public hearings, to have the proposed amendments to the ordinance read at each hearing, and to vote on the amendments after each reading.

Prior to the meeting on June 9, two of the six councilmen had filed written statements of disqualification from acting on the Wal-Mart applications pursuant to COIA, and they did not attend the meeting. Councilman Foster, a third member, was also absent. He sent a letter to the Mayor, delivered before the meeting convened, stating: "I recuse myself [from acting on the Wal-Mart applications]." The letter did not invoke COIA and gave no reason for his recusal.

The remaining three councilmen met at the advertised time on June 9. When a member of the audience questioned whether a quorum was present, the Town Attorney opined that the three councilmen present were authorized to act by the terms of

2

COIA. His view was that the disqualification of two councilmen pursuant COIA had, in effect, reduced the size of the council to four as far as the pending applications were concerned, that the three members who were present were a majority of that group, and thus constituted a quorum.

The three councilmen then proceeded to conduct a public hearing at which many local residents appeared and spoke, after which the three councilmen acted on several unrelated matters on the agenda, but took no action on the Wal-Mart applications. The Mayor announced that he was calling a special meeting of the council for the following day, June 10, 2003.

The same three councilmen met for a special meeting on June 10. Again, the three disqualified or recused members were absent. At this meeting, the Wal-Mart applications received their first reading and the affirmative vote of the three councilmen present. The Mayor called a special meeting of the council for June 12, 2003 to consider a second reading of the Wal-Mart applications. Before the June 12 meeting convened, however, Councilman Foster sent a second letter to the Mayor, purporting to withdraw his letter of recusal and stating that he was now "legally entitled to participate and vote on this matter." Nevertheless, Councilman Foster refused to attend. This had the effect of aborting the scheduled

3

June 12 meeting because the Town Attorney was in doubt whether the quorum provisions of COIA continued to apply.[1]

Finally, the Wal-Mart applications came before the council at a regular meeting on July 28, 2003.  All councilmen except Foster were initially present and cast their votes on unrelated matters.  When the Wal-Mart applications were called, one of the two councilmen who had originally disqualified himself under COIA left the room and did not participate.  The other disqualified councilman remained present, as he explained, to avoid further quorum problems, but did not participate in the Wal-Mart case.  The Wal-Mart applications then received a second reading and were approved with three affirmative votes, with four councilmen present, one of whom abstained, and two absent.

Joseph Jakabcin and others (the plaintiffs) filed a bill of complaint, later amended, against the Town, Wal-Mart and the H.H.C. Richards Family Trust, the record owner of the 121-acre tract, seeking a declaratory judgment invalidating the

---

[1] Councilman Foster made no secret of his motive for these maneuvers.  At a council meeting on July 14, 2003, he read into the public record a third letter, in which he explained that he was opposed to the Wal-Mart application and that he perceived that the remaining three councilmen who were not disqualified were ready to approve it.  He wrote:  "I will express my opposition in the only effective way available to me, by leaving this meeting before this matter is brought up, thereby effectively depriving the town council of a quorum."

Town Council's actions in approving the Wal-Mart applications and, if the defendants were to take any action to proceed with the Wal-Mart project during the pendency of the suit, for injunctive relief.  The plaintiffs contended they were residents of the area aggrieved by the action of the Town Council and that the proceedings of the council were unlawful and void because of the lack of a quorum.  The defendants responded with demurrers, a plea in bar and other pleadings not pertinent to this appeal.  The circuit court considered the pleadings upon the memoranda of law and arguments of counsel and sustained the defendants' plea in bar, ruling that the "safe harbor" provisions of Code § 2.2-3112(C) applied and established that the three councilmen who acted on the case constituted a quorum.  We awarded the plaintiffs an appeal.[2]

*Analysis*

Code § 15.2-1415, effective December 1, 1997, incorporates the language contained in former Code §§ 15-242 and 15-247 (1956) and former Code §§ 15.1-537 and 15.1-542 (1989).  That section governs the attendance requirements for

_____

[2] Error was also assigned to the circuit court's ruling that the injunctive relief prayed for by the plaintiffs was barred by Code § 8.01-189.  Because we regard the quorum issue as dispositive, it is unnecessary to address the injunction issue.  No error was assigned to the remaining rulings made by the circuit court.

valid meetings of the governing bodies of counties, cities and towns. It provides, in pertinent part:

> Unless otherwise specially provided, a governing body may exercise any of the powers conferred upon it at any meeting of the governing body, regular, special or adjourned at which a quorum is present. A majority of the governing body shall constitute a quorum.

Thus, unless an exception to the quorum requirement is created by another provision of law, the council meetings of June 9 and 10, 2003, both lacked a quorum. The acts of members of a local governing body in the absence of a quorum, except to adjourn the meeting to a later time, are void. 4 Eugene McQuillin, The Law of Municipal Corporations § 13.27.10, at 874 (3d ed. rev. vol. 2002).

In Levisa Oil Corp. v. Quigley, 217 Va. 898, 234 S.E.2d 257 (1977), we applied the same rule to the governance of domestic corporations. There, a stockholders' meeting had been convened with a quorum present. During the meeting, stockholders absented themselves, leaving present the holders of less than a majority of shares. We held that the acts purportedly done in the absence of a quorum were void. Id. at 904, 234 S.E.2d at 261.

The policy reasons for applying that rule to meetings of local governing bodies are especially strong. In our system of representative government, the voters must of necessity

rely on their elected legislative representatives to protect their interests, to defend their freedoms, to advocate their views and to keep them informed.  Elected representatives who voluntarily absent themselves from meetings of the governing body to which they have been elected cannot fully discharge those duties.  For that reason, penalties are often provided for the unauthorized absences of members.  Section 11 of the Charter of the Town of Front Royal, for instance, provides that if any councilman is voluntarily absent from three consecutive regular meetings, the council may declare his seat vacant.  Section 4-11 of the Town's municipal code provides that a councilman recorded as present at any council meeting may not thereafter absent himself without the permission of the presiding officer.

The circuit court decided that the foregoing rule was inapplicable because of the effect of COIA, enacted in 1987, which provides a uniform standard of conduct for all state and local government officers and employees with respect to conflicts of interests.  Code § 2.2-3100. That section provides, in pertinent part:  "This chapter shall supersede all general and special acts and charter provisions which purport to deal with matters covered by this chapter. . . ."  Code § 2.2-3112(A)(1) provides that a state or local government officer or employee:  "Shall

disqualify himself from participating in the transaction"

in which he has an interest, as thereinafter defined.

Code § 2.2-3112(C) provides:

> If disqualifications of officers or employees in
> accordance with this section leave less than the
> number required by law to act, the remaining members
> shall have authority to act for the agency by
> majority vote. . . .

The circuit court ruled that this "safe harbor" provision

applied, so that the votes of the three councilmen in favor of

the Wal-Mart applications were sufficient at all three Town

Council meetings under consideration.

We take a different view of the scope of COIA.  As its

opening section makes clear, its legislative purpose is to

establish a uniform standard of conduct for public officers

and employees throughout the Commonwealth with respect to

conflict of interests.  To the extent other laws "purport to

deal with matters covered by this chapter," i.e., conflict of

interests, those laws were superseded by the provisions of

Code § 2.2-3100, the opening section of COIA.

Code § 15.2-1415, by contrast, is captioned:  "At what

meetings governing body may act."[3]  It is the opening section

---

[3] The purpose of a title is to state the general subject covered by the act.  While not a part of the act itself, it may be read to ascertain the act's purpose.  Hawkins v. Commonwealth, 255 Va. 261, 269, 497 S.E.2d 839, 842 (1998); Gilmore v. Landsidle, 252 Va. 388, 394, 478 S.E.2d 307, 311 (1996).

8

of Title 15.2, Chapter 14, Article 2 of the Code, which is captioned "Meetings of Governing Bodies."  It has nothing to do with conflict of interests.

The courts assume that a legislative body, in enacting new legislation, was aware of existing laws.  See Sexton v. Cornett, 271 Va. 251, 257, 623 S.E.2d 898, 901 (2006).  Especially in view of the strong public policy considerations underlying the quorum requirements of Code § 15.2-1415, discussed above, we assume that the General Assembly, when enacting COIA in 1987, intended to leave the much older quorum laws undisturbed.  Otherwise, the quorum requirements would have been amended or COIA would have been so framed as to supersede a broader area than only those laws "which purport to deal with matters covered by this chapter."

*Conclusion*

We hold that the physical presence of a majority of the members is necessary in order that a valid meeting of a governing body may be convened and that their continuing presence is necessary in order that the governing body may exercise the powers conferred upon it by law, except that a number less than a quorum may adjourn the meeting to a later time.  When a quorum is present, however, and members are disqualified from acting on a particular matter pursuant to the provisions of COIA, the remaining member or members may

9

validly act on the matter by majority vote. The disqualified members do not violate the provisions of COIA by remaining present at the meeting, taking no part in the consideration of, and action upon, the matter in which they are disqualified. Indeed, it is their duty to remain if their absence would "break the quorum."[4] See Levisa, 217 Va. at 904, 234 S.E.2d at 261.

The plaintiffs do not contest the validity of the final meeting of the Town Council, on July 28, 2003, to consider the Wal-Mart applications, because four councilmen, a majority of the membership, were present to constitute a quorum, even though one member present was disqualified and did not act on the case. Nevertheless, the validity of the Town Council's approval of the applications depends on the validity of its meeting on June 9, 2003, at which a public hearing was purportedly held pursuant to advertisement, as well as upon the validity of the following meeting on June 10, 2003, when the Wal-Mart applications purportedly received their first reading and first vote. We hold that both meetings were a nullity because of the lack of a quorum and that the acts

---

[4] One of the disqualified members, initially present at the July 28 meeting, asked the Mayor to excuse him from further attendance. The Mayor refused, but he nevertheless left the meeting in the erroneous belief that it would be improper to remain.

10

purportedly done by the councilmen present on those days were void.  The applications therefore received only one valid public hearing, reading, and vote, rather than two, as required by law.  It follows that the Town Council failed to approve the Wal-Mart applications and that the circuit court erred in sustaining the defendants' plea in bar.

Accordingly, we will reverse the orders from which the appeal was taken and enter final judgment here, declaratory of the invalidity of the Town Council's approval of the applications for rezoning and special use permits.

<u>Reversed and final judgment.</u>