COURT OF APPEALS OF VIRGINIA

Present:    Chief Judge Felton, Judges Clements and Beales
Argued at Richmond, Virginia


EDWARD JEROME BULLANO

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0577-06-2              CHIEF JUDGE WALTER S. FELTON, JR.
                                                          JANUARY 30, 2007
RENEE ZEIGLER BULLANO


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Herbert C. Gill, Jr., Judge

Brian H. Jones (The Barnes Law Firm, on brief), for appellant.

Ronald S. Evans (Brenner, Evans, & Millman, P.C., on brief), for
appellee.


On appeal of a final decree of divorce, Edward Jerome Bullano ("husband") contends that

the trial court erred in awarding spousal support and attorney's fees and costs to Renee Zeigler

Bullano ("wife"). Husband also contends the trial court erred in admitting testimony of Dr.

Janice McMillan, the parties' marriage counselor, regarding statements made by him during the

counseling sessions, and in permitting her to express an expert opinion that wife suffered from

depression. Husband also asserts that the trial court erred in awarding wife $1,000 per month in

permanent spousal support, in awarding her $36,061.33 in attorney's fees and costs, and in

failing to award to him attorney's fees and costs. Each party requests attorney's fees and costs

on appeal. For the following reasons, we affirm the judgment of the trial court, and decline to

award attorney's fees on appeal.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

On appeal, we view the evidence in the light most favorable to wife, the prevailing party below. Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003). So viewed, the record reflects that husband and wife were married in March 1974,[1] separated in 2004 after thirty years of marriage, and divorced in February 2006.

Husband was employed as an engineer for the first eleven years of the marriage before switching careers to insurance sales, later forming the Ed Bullano Agency in 1995.[2] During the course of the agency's existence, husband worked as an independent agent and as an agent for the John Hancock Company. His income in insurance was commission-based and varied annually. In July 2004, following the institution of divorce proceedings, husband became affiliated with Allstate Financial as an insurance agent, requiring him to terminate his independent agency. The trial court determined that, for purposes of spousal support, husband's annual income was $65,000 based on a recent residential loan application he completed.

Wife worked throughout her career as an educator.[3] For purposes of calculating spousal support, the trial court determined wife's annual income to be $53,000.

Dr. McMillan, a licensed marriage and family counselor, initially began counseling one of the parties' daughters in November 2003. In January 2004, she began to counsel both parties in their marriage. Eventually, she provided counseling to wife alone. Both parties considered her services to be marriage counseling.

---

[1] Three children, each of whom are over the age of eighteen and emancipated, were born of the marriage.

[2] Husband obtained a B.A. degree in Industrial Engineering and a Master's in Business Administration.

[3] Wife obtained both a B.S. and Master's degree in Education.

- 2 -

Wife filed a bill of complaint seeking divorce in April 2004. Husband filed a cross-bill for divorce in May 2004. In July 2004, following negotiation as to the division of the marital residence, the parties entered into a written agreement providing for wife to retain the residence, assume payment of the mortgage, and pay husband $92,500 for his share of the equity in the home. The agreement reserved "all other claims, rights and obligations growing out of the marital relationship for future consideration under Equitable Distribution." Husband agreed to leave the residence by September 1, 2004. After the parties negotiated their interests in the marital residence, and one week prior to husband's signing the agreement, husband withdrew $54,000 from the parties' joint home equity line of credit, secured by the residence, without wife's knowledge or consent.[4] In August 2004, the trial court ratified and affirmed the parties' written agreement as to the marital residence, ordered husband to repay the money he withdrew on the equity line, and enjoined the parties from waste or dissipation of marital assets pending resolution of remaining equitable distribution issues.

In July 2005, the parties entered into a written joint agreement resolving most of the remaining issues related to equitable distribution. They proceeded to trial[5] to resolve the remaining issues: 1) the value and equitable distribution of the Ed Bullano Agency; 2) wife's claim of a separate interest in the marital home resulting from separate gifts from her parents[6];

---

[4] Husband made twenty-seven withdrawals of $2,000 (totaling $54,000) on the same day from the equity line.

[5] The trial court received the parties' evidence at trial by way of *de bene esse* depositions of four witnesses, and the *ore tenus* testimony of both parties and their respective valuation experts.

[6] Wife claimed that she received $30,000 from her parents as separate funds that she contributed towards the purchase of the marital residence and reducing the mortgage.

3) ownership of an ING life insurance policy[7]; 4) wife's claim for spousal support and maintenance; and 5) the claim of each party for attorney's fees and costs.

In October 2005, the trial court issued its letter opinion holding that at the time of the parties' separation, the Ed Bullano Agency was no longer a going business concern and, therefore, had zero value for equitable distribution purposes.[8]  It also held that, while $10,000 in gifts from wife's parents could be traced as her separate property in the marital residence, the parties' earlier written agreement disposing of the marital residence superseded and "trump[ed] any claim by [wife] as to the gifts from her parents being separate property."  It declined to award the ING life insurance policy to wife, requiring that the parties redeem the policy for its cash surrender value and equally divide the proceeds.  See Code § 20-107.3(G).  It awarded wife $1,000 per month in permanent spousal support and $36,061.33 in attorney's fees and costs, the full amount incurred by her in the divorce proceedings.  It declined to award husband his attorney's fees or costs.

In November 2005, husband filed a motion for reconsideration of the trial court's award of spousal support and attorney's fees and costs, and moved to terminate or reduce spousal support as a result of a substantial rate increase on his adjustable rate mortgage.  In February 2006, the trial court denied husband's motions and affirmed its previous rulings, stating "[u]pon review, the Court is even more convinced that its ruling is correct and fair to both parties."  This appeal followed.

---

[7] The policy provided $200,000 coverage on husband's life, with a $100,000 rider on wife's life.  The policy's cash surrender value was $3,680.

[8] The court found the agency to be a "shell" through which husband received payment of premium residuals from prior insurance sales.

- 4 -

## DR. McMILLAN'S TESTIMONY

Husband contends that the trial court abused its discretion in admitting and considering the testimony of Dr. McMillan in determining whether wife was entitled to an award of spousal support and attorney's fees and costs. He first argues that Dr. McMillan's testimony contained statutorily privileged and confidential information he provided to her in the course of marriage counseling, inadmissible without his permission under Code § 8.01-400.2. He also argues that Dr. McMillan's testimony was inadmissible hearsay and that she was not qualified to render an opinion as to wife's depression.

### A. Admissibility Under Code § 8.01-400.2

Code § 8.01-400.2 provides, in pertinent part, that:

> [e]xcept at the request of or with the consent of the client, no licensed professional counselor . . . or licensed marriage and family therapist . . . shall be required in giving testimony as a witness in any civil action to disclose any information communicated to him in a confidential manner, properly entrusted to him in his professional capacity and necessary to enable him to discharge his professional or occupational services . . . provided, however, that when the physical or mental condition of the client is at issue in such action, or when a court, in the exercise of sound discretion, deems such disclosure necessary to the proper administration of justice, no fact communicated to, or otherwise learned by, such practitioner in connection with such counseling, treatment or advice shall be privileged, and disclosure may be required.

Id.[9]

At trial, Dr. McMillan testified, by deposition, that husband was physically and emotionally abusive to wife. She testified that during the counseling sessions, husband was "quick to temper if the discussions were things that were of a sensitive nature." She noted that in

---

[9] The General Assembly amended Code § 8.01-400.2, effective July 1, 2005, to specifically include "licensed marriage and family therapists, as defined in [Code] § 54.1-3500."

almost every session husband was "angry and defensive," that he acknowledged "that he had hit his [teenage] daughter after an altercation[,] and that he felt . . . that was an okay thing to do." Dr. McMillan also testified that husband told her he "needed to motivate himself to work more and to make more money" but was "unmotivated" to do so. She testified that both parties "agreed that [husband] spent an awful lot of time on the golf course." She also testified that wife told her that following a car accident, in which she and one of the parties' daughters had been injured and taken away by ambulance, husband "showed absolutely no caring, no concern, didn't even ask her if she was okay" and that as a result wife initially suffered from a "brief depressive disorder," that later developed into a "major depressive disorder."

In denying husband's motion to exclude Dr. McMillan's testimony under Code § 8.01-400.2, the trial court noted that Code §§ 20-107.1(E)(4) and 20-107.3(E)(4) expressly required it to consider "[t]he age and physical and mental condition of the parties" in determining spousal support and in equitably distributing marital property. It specifically noted in its letter opinion that husband "is in good physical and mental health," while wife "suffers from a number of physical and mental ailments," including "severe clinical depression for which she takes [medication]" and neck problems.

We conclude that the trial court did not err in admitting Dr. McMillan's testimony over husband's objection that it contained privileged information obtained from him during the course of marriage counseling. The trial court correctly determined that, because it was required to consider the physical and mental condition of the parties in determining spousal support and equitable distribution under Code §§ 20-107.1 and 20-107.3, the exception to Code § 8.01-400.2 permitted the admissibility of otherwise privileged communications under Code § 8.01-400.2. The trial judge stated: "I don't like the statute . . . I think it puts mental health professionals in

real dilemmas.  And I think it puts parties who go see mental health people in real dilemmas.
But the statute [Code § 8.01-400.2] is what it is, and I have to interpret it as it is read."[10]

### B.  Hearsay Objection

As to husband's hearsay objections to Dr. McMillan's testimony, we note that he did not object to the trial court's admitting, as wife's sworn testimony, wife's bill of complaint and answer to husband's cross-bill.  These admitted documents, without objection from husband, included the same hearsay evidence presented in Dr. McMillan's deposition testimony at trial.

When wife testified under oath at trial, the following colloquy occurred:

> [WIFE'S COUNSEL]:  Judge, I know you read the Bill of Complaint.  But rather than going in detail, what I was going to propose at this time was to introduce the Bill of Complaint subject to cross-examination.
>
> THE COURT:  Any objections?
>
> [HUSBAND'S COUNSEL]:  No, sir.
>
> THE COURT:  Motion granted.
>
> [WIFE'S COUNSEL]:  Are the allegations in the Bill of Complaint accurate?
>
> [WIFE]:  Yes, they are.
>
> [WIFE'S COUNSEL]:  Specifically, and I'm going to ask on one issue --

---

[10] The General Assembly was aware of the provisions of Code §§ 20-107.1 and 20-107.3, requiring trial courts to consider the mental and physical condition of the parties in determining spousal support and equitable distribution, when it added "licensed marriage and family therapists" to Code § 8.01-400.2, effective July 1, 2005.  See Jakabcin v. Town of Front Royal, 271 Va. 660, 667, 628 S.E.2d 319, 323 (2006) ("[t]he courts assume that a legislative body, in enacting new legislation, was aware of existing laws").  "[T]wo statutes must be read in harmony . . . [because] of the rule that every legislative enactment must be given full effect unless it is impossible to do so."  Natrella v. Board of Zoning Appeals, 231 Va. 451, 461, 345 S.E.2d 295, 302 (1986).

THE COURT: Let me make sure that we're clear. The purposes of you introducing the Bill of Complaint for the statutory factor -- there are a lot of allegations in the Bill of Complaint. And I'm sure that counsel is not stipulating to the truthfulness of those [statements].

[WIFE'S COUNSEL]: *What I was asking is that that be submitted as [wife's] testimony, subject to cross-examination, so she does not have to recite it all.*

THE COURT: Okay.

[HUSBAND'S COUNSEL]: I don't have any problem with that, Judge.

THE COURT: So received. Subject to cross-examination.

\* \* \* \* \* \* \*

[WIFE'S COUNSEL]: I would also ask the Court, subject to cross-examination, to consider [wife's] answer to Cross Bill in lieu of testimony on those items that were stated in the answer to Cross Bill and signed under oath.

THE COURT: Any objection?

[HUSBAND'S COUNSEL]: No, sir.

THE COURT: So received.

[WIFE'S COUNSEL]: And are the statements made in your answer to Cross Bill accurate?

WIFE: Yes, they are.

(Emphasis added).

At the conclusion of wife's testimony, husband made no objection to the admissibility of the statements contained in her bill of complaint and answer to his cross-bill as her sworn testimony at trial.[11] Dr. McMillan's testimony of husband's statements to her, which husband

---

[11] See Mullin v. Mullin, 45 Va. App. 289, 297 n.2, 610 S.E.2d 331, 335 n.2 (2005) (response of "subject to cross-examination" when evidence offered for admission is not equivalent to an objection to the admissibility of the evidence).

- 8 -

contends is objectionable hearsay, was the same as that which came into evidence through wife's testimony, including her sworn testimony in the pleadings. Even assuming, without deciding, that the trial court erred in admitting Dr. McMillan's testimony of husband's statements to her as hearsay, that error at most would be harmless under these circumstances. See Williams v. Commonwealth, 4 Va. App. 53, 78-79, 354 S.E.2d 79, 93-94 (1987) (errors that do not affect the outcome of a case do not provide a basis for overturning a trial court's finding).

## C. Opinion Testimony

Finally, we find husband's assertion that Dr. McMillan was not qualified to give any opinion or diagnosis that wife suffered from depression to be without merit. The trial court could reasonably conclude that Dr. McMillan, as a licensed professional counselor and licensed marriage and family therapist, in practice for twenty-three years, was competent to render an opinion as to the diagnosis and treatment of depression within the limits of her license and qualifications. See Wileman v. Commonwealth, 24 Va. App. 642, 647, 484 S.E.2d 621, 624 (1997) ("[w]hether a particular witness is qualified to testify as an expert is largely a matter in the discretion of the trial court, and its rulings allowing a witness to testify will not be disturbed unless it clearly appears that [the expert] was not qualified" (citations omitted)). Dr. McMillan's unrefuted testimony was that her license permitted her to "diagnose and provide diagnosis codes for insurance reimbursement." Husband thoroughly cross-examined Dr. McMillan as to her qualifications and the basis of her diagnosis that wife suffered from depression. The trial court was free to give such weight to her testimony and diagnosis as it chose. We find no error in the trial court's admitting the testimony of Dr. McMillan that wife suffered from depression as a result of husband's behavior towards her, and as a result of the deteriorating marriage of thirty years.

On this record, we find no reversible error in the trial court's admission of Dr. McMillan's testimony.

II.

SPOUSAL SUPPORT

Husband contends that the trial court abused its discretion in awarding wife permanent spousal support of $1,000 per month. He contends the trial court's spousal support award violates the "double-dipping" prohibition articulated in Gamble v. Gamble, 14 Va. App. 558, 421 S.E.2d 635 (1992), and argues that the amount awarded was not justified under the factors of Code § 20-107.1. He also argues that wife did not request an award of that amount, that she failed to demonstrate a need for that amount, and that he lacks the financial ability or resources to pay that amount.

A. "Double Dipping"

In Gamble, we held that:

> The outstanding obligations on marital property are properly considered when Code § 20-107.3 [equitable distribution] determinations are made and the marital wealth is equitably distributed. The same obligations are not to be factored again into the Code § 20-107.1 [spousal support] determination. In short, the appropriate separation between considerations of spousal support and considerations of an equitable distribution of marital wealth prevents a "double dip" by a spouse who seeks and receives encumbered marital property under Code § 20-107.3 and also seeks and receives spousal support under Code § 20-107.1.

14 Va. App. at 577, 421 S.E.2d at 646-47.

Husband contends that the trial court's award of spousal support of $1,000 a month provided wife with a means of paying expenses related to debt allocated to her as part of equitable distribution, to wit, payment to husband of his $92,500 equity in the marital residence, and thereby impermissibly created a "double-dipping" for wife, prohibited under Code §§ 20-107.1 and 20-107.3. From our review of this record, we cannot conclude that the trial

court's award of spousal support was an impermissible "double dip." Any award of spousal support enables the receiving spouse to pay expenses of any nature. Payment by a spouse receiving spousal support of indebtedness incurred in the receipt of property during equitable distribution alone will not constitute the prohibited "double dipping" we addressed in Gamble. Otherwise, any award of spousal support to a spouse who has received encumbered property in equitable distribution of a marital estate would be prohibited.

### B. Amount of Support Awarded

"Whether a spouse is entitled to support, and if so how much, is a matter within the sound discretion of the trial court and will not be disturbed on appeal unless it is clear that some injustice has been done." Bomar v. Bomar, 45 Va. App. 229, 238-39, 609 S.E.2d 629, 634 (2005) (citations omitted).

> In fixing the amount of [spousal support], the court must look to the financial needs of the wife, her age, physical condition and ability to earn, and balance against these circumstances the financial ability of the husband to pay, considering his income and his ability to earn. The amount awarded must, in any event, be fair and just under all the circumstances of the case.

Klotz v. Klotz, 203 Va. 677, 680, 127 S.E.2d 104, 106 (1962) (citations omitted).

> In reviewing a spousal support award, we are mindful that the trial court has broad discretion in awarding and fixing the amount of spousal support. Accordingly, our review is limited to determining whether the trial court clearly abused its discretion. In exercising its discretion, the trial court must consider all the factors enumerated in Code § 20-107.1(E) when fashioning its award, but it is not required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors. That being said, the trial court's findings must have some foundation based on the evidence presented. Where that evidentiary foundation exists and the record discloses that the trial court has given due consideration to each of [the statutory] factors, we will not disturb its determination as to spousal support on appeal.

Miller v. Cox, 44 Va. App. 674, 679, 607 S.E.2d 126, 128 (2005) (citations omitted).

Furthermore, "[t]he judgment of the trial court is presumed correct and we may not disturb its

ruling if there is credible evidence to support it." Bomar, 45 Va. App. at 239, 609 S.E.2d at 634 (citations omitted).

Here, wife requested spousal support in her initial pleadings and throughout the course of litigation. She alternatively requested a lump sum award and various monthly periodic payments based on differing income and expense scenarios. The trial court determined that wife was entitled to a monthly spousal support payment of $1,000, explicitly noting in its letter opinion that its decision was based on its consideration of each of the Code § 20-107.1(E) statutory factors as applied to the facts it determined from the evidence. It found that the parties' standard of living during the marriage was "quite comfortable." It also found that husband was in good physical and mental health, while wife suffered from a number of physical and mental ailments, including clinical depression for which she took medication, as well as back and neck problems. The record further shows that the trial court also evaluated wife's financial needs, her age, her ability to earn, and the standard of living enjoyed during the marriage, against husband's ability to pay, considering his income and ability to earn. See Via v. Via, 14 Va. App. 868, 870, 419 S.E.2d 431, 433 (1992) (citing Klotz, 203 Va. at 680, 127 S.E.2d at 106 (citations omitted)). For spousal support purposes, it found husband's annual income to be $65,000, and wife's to be $53,000, based on evidence presented by the parties.

On this record, we find no abuse of discretion or error on the part of the trial court in awarding permanent spousal support to wife of $1,000 per month.

### III.

### AWARD OF ATTORNEY'S FEES AND COSTS AT TRIAL

Husband contends that the trial court abused its discretion in its award of $36,061.33 in attorney's fees and costs to wife. He argues that because the parties settled and entered into written agreements resolving almost all of the property issues prior to trial; that a substantial

- 12 -

portion of wife's attorneys' fees and costs were incurred in preparation for and at trial; and that he prevailed at trial on the two remaining issues of equitable distribution, the trial court erred in awarding wife her incurred attorney's fees and costs through trial.  He also contends that the trial court erred in not awarding his costs and attorneys' fees at trial.  We find no error in the trial court's rulings on the award of attorneys' fees and costs on this record.

"Whether to award attorney's fees is a matter submitted to the sound discretion of the trial court and is reviewable on appeal only for an abuse of discretion."  Kane v. Szymczak, 41 Va. App. 365, 375, 585 S.E.2d 349, 354 (2002) (citation omitted).  We have previously held "[t]he key to a proper award of counsel fees to be reasonableness under all of the circumstances revealed by the record," and evidence in the record must explain or justify the amount of the award.  McGinnis v. McGinnis, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985).  Furthermore, "[a]n award of attorney's fees to a party in a divorce suit is a matter for the trial court's sound discretion *after considering the circumstances and equities of the entire case*."  Artis v. Artis, 4 Va. App. 132, 138, 354 S.E.2d 812, 815 (1987) (citations omitted) (emphasis added).

"Where the trial judge finds that a fee award is justified, evidence of time expended and services rendered is a proper basis upon which to fix an award."  Westbrook v. Westbrook, 5 Va. App. 446, 458, 364 S.E.2d 523, 530 (1988).  Wife's attorney submitted detailed records of time and effort expended on her behalf.  From the evidence presented in this record, the trial court could conclude that husband's behavior leading to the parties' separation after thirty years of marriage, and during the divorce proceedings, resulted in increased legal costs for wife to protect her interests and to preserve the marital assets.  See Taylor v. Taylor, 27 Va. App. 209, 216, 497 S.E.2d 916, 919 (1998).

On the record before us, we hold that the trial court did not abuse its discretion in awarding to wife $36,061.33 in attorney's fees and costs, and in denying husband an award of his attorneys' fees and costs.

IV.

ATTORNEY'S FEES AND COSTS ON APPEAL

Both husband and wife seek attorney's fees and costs on appeal.

> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear. The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

O'Loughlin v. O'Loughlin, 23 Va. App. 690, 695, 479 S.E.2d 98, 100 (1996). In this context, and on consideration of the record before us, we hold neither party is entitled to an award of attorney's fees and costs incurred in this appeal.

CONCLUSION

From this record, we find that the trial court did not err in admitting the testimony of Dr. McMillan. We also find that the trial court did not err in its award of spousal support or in its award of $36,061.33 in attorney's fees and costs to wife. We conclude that the trial court did not err in failing to award husband his attorneys' fees and costs at trial. We find that neither party is entitled to an award of attorney's fees or costs on appeal. Accordingly, we affirm.

Affirmed.