PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LARRY MILLER; 11TH SENATORIAL
DISTRICT REPUBLICAN COMMITTEE,
*Plaintiffs-Appellees,*

v.

MICHAEL BROWN, in his official
capacity as Chairman of the
Virginia State Board of Elections;
BARBARA HILDENBRAND, in her
official capacity as Vice-Chairman
of the Virginia State Board of
Elections; JEAN JENSEN, in her
official capacity as Secretary of the
Virginia State Board of Elections,
*Defendants-Appellants.*

No. 06-2334

REPUBLICAN PARTY OF VIRGINIA,
*Amicus Supporting Appellees.*

LARRY MILLER; 11TH SENATORIAL
DISTRICT REPUBLICAN COMMITTEE,
*Plaintiffs-Appellants,*

v.

MICHAEL BROWN, in his official
capacity as Chairman of the
Virginia State Board of Elections;
BARBARA HILDENBRAND, in her
official capacity as Vice-Chairman
of the Virginia State Board of
Elections; JEAN JENSEN, in her
official capacity as Secretary of the
Virginia State Board of Elections,
*Defendants-Appellees.*

No. 07-1002

REPUBLICAN PARTY OF VIRGINIA,
*Amicus Supporting Appellants.*

Appeals from the United States District Court
for the Eastern District of Virginia, at Richmond.
Henry E. Hudson, District Judge.
(3:05-cv-00266-HEH)

Argued: March 19, 2007

Decided: October 1, 2007

Before DUNCAN, Circuit Judge, and WIDENER[1] and
WILKINS, Senior Circuit Judges.

[1]Judge Widener heard oral argument in this case but died prior to the
time the decision was filed. The decision is filed by a quorum of the
panel. 28 U.S.C. § 46(d).

Affirmed by published opinion. Senior Judge Wilkins wrote the opinion, in which Judge Duncan joined.

---

**COUNSEL**

**ARGUED:** Frank Snead Ferguson, Deputy Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellants/Cross-Appellees. Kenneth Thomas Cuccinelli, II, CUCCINELLI & DAY, P.L.L.C., Fairfax, Virginia, for Appellees/Cross-Appellants. **ON BRIEF:** Robert F. McDonnell, Attorney General of Virginia, William E. Thro, State Solicitor General, Stephen R. McCullough, Deputy State Solicitor General, William C. Mims, Chief Deputy Attorney General, Maureen Riley Matsen, Deputy Attorney General, J. Jasen Eige, Senior Assistant Attorney General, James V. Ingold, Senior Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Appellants/Cross-Appellees. Christopher M. Day, Paul A. Prados, CUCCINELLI & DAY, P.L.L.C., Fairfax, Virginia; Patrick M. McSweeney, Wesley G. Russell, Jr., Jeffrey L. Cimbalo, MCSWEENEY, CRUMP, CHILDRESS & GOULD, P.C., Richmond, Virginia, for Appellees/Cross-Appellants. Louis N. Joynes, II, JOYNES & GAIDIES, Virginia Beach, Virginia, for Amicus Supporting Appellees/Cross-Appellants.

---

**OPINION**

WILKINS, Senior Circuit Judge:

Three officials of the Virginia State Board of Elections (collectively, "the Board") appeal a district court order holding that Virginia's open primary law, Va. Code Ann. § 24.2-530 (2006), is unconstitutional as applied to the 11th Senatorial District Republican Committee and its chairman, Larry Miller,[2] and enjoining the Board from requiring the Committee to hold an open primary in Virginia's 11th Senatorial District in 2007. The Committee cross-appeals

---

[2]We refer to the 11th Senatorial District Republican Committee and Miller collectively as "the Committee."

another portion of that order holding that § 24.2-530 is not facially unconstitutional. For the reasons that follow, we affirm the district court order in its entirety.

I.

On June 4, 2004, the Republican Party of Virginia amended its Plan of Organization (Plan) to allow its affiliated committees, of which the Committee is one, to exclude from the Republican nomination process any voter who participated in the nomination process of another party in Virginia "after March 1, 2004, or in the last five years, whichever is more recent." J.A. 20. The Plan provides an exception for voters who, in writing, renounce their affiliation with any other party, indicate their agreement with Republican Party principles, and express their intent to support Republican nominees. The amended Plan became effective on June 15, 2006.

The Committee oversees the nomination process for the Republican candidate for the 11th District seat in the Senate of Virginia. Stephen Martin, a Republican, currently holds the seat and is running for reelection this year. Under Virginia law, an incumbent state legislator is entitled to select the method of nomination for his seat. *See* Va. Code Ann. § 24.2-509(B) (2006). Virginia allows nomination of candidates not only by a primary—which is conducted and funded by the state—but also "by methods other than a primary." Va. Code Ann. § 24.2-510 (2006). Such other methods, which are conducted and funded by the party, include (but are not limited to) a party convention, *see* Va. Code Ann. § 24.2-508(ii) (2006); a mass meeting, also known as a "caucus"; and a party canvass or unassembled caucus, also called a "firehouse primary."[3]

In August 2004, Senator Martin designated a primary as the method of nomination in the 11th District for the 2007 election. In accordance with Senator Martin's designation, the Committee, on January 13, 2005, formally recognized that a primary would be used to select its nominee. Consistent with the amendments to the Plan, the Committee chose to exclude voters who had voted in a Democratic

---

[3]A firehouse primary is the functional equivalent of a state-run primary except that the party operates and funds the entire process.

Party primary between March 1, 2004, and June 12, 2007 (the date of the Republican primary), except those voters who complied with the written "loyalty" requirements of the Plan. In a letter dated January 17, 2005, Miller informed the Board of the Committee's decision. His letter requested "written confirmation . . . of the [Board's] intention to implement the above-noted restrictions on the participation by Democrats in our primary." J.A. 42.

On February 9, 2005, the Board's Secretary, Jean R. Jensen, replied to Miller by letter. Jensen stated that the Committee could take whatever action it deemed appropriate under the Plan. Jensen noted, however, that the only provision of Virginia law allowing political parties to restrict primary voters' eligibility was the statute governing presidential primaries. *See* Va. Code Ann. § 24.2-545(A) (2006). Further, Jensen cited Virginia's open primary law, Va. Code Ann. § 24.2-530, which provides:

> All persons qualified to vote, pursuant to [Va. Code Ann.]
> §§ 24.2-400 through 24.2-403, may vote at the primary. No
> person shall vote for the candidates of more than one party.

Jensen explained that unless the Committee could "point to a specific provision" of Virginia election law authorizing the Board to restrict voting in the 2007 11th District primary, the Board would "have to comply with the law of the Commonwealth in effect at that time."[4] J.A. 45.

The Committee subsequently brought this action against the Board under 42 U.S.C.A. § 1983 (West 2003), seeking a declaration that § 24.2-530 violates the Committee's First and Fourteenth Amendment right of free association. The Board moved to dismiss, arguing, *inter alia*, that the Committee lacked standing and that the case was not yet

---

[4]Jensen further explained that in accordance with Va. Code Ann. § 24.2-516 (2006), the Board "may accept notification of the selection of the primary method of nomination for the 2007 election in 11th Senate District no earlier than February 22, 2007, and no later than March 14, 2007." J.A. 44 (emphasis omitted). At oral argument, counsel for the Committee confirmed that Senator Martin had resubmitted his designation of a primary within the time frame required by § 24.2-516.

ripe. The district court granted the Board's motion to dismiss on standing and ripeness grounds. *See Miller v. Brown*, 394 F. Supp. 2d 794, 802-03 (E.D. Va. 2005). We reversed, holding that the Committee possessed standing and that the case was ripe. *See Miller v. Brown*, 462 F.3d 312, 316-21 (4th Cir. 2006). We thus remanded for "consideration of the merits." *Id.* at 321.

On remand, the Committee moved for summary judgment, arguing that § 24.2-530 was unconstitutional on its face and as applied to the Committee. The Committee also moved for a permanent injunction prohibiting enforcement of the statute. After a hearing, the district court held that the open primary law was not facially unconstitutional because Virginia law permitted other methods of nomination under which a political party could restrict participation in its nominating process to voters who share its political beliefs. *See Miller v. Brown*, 465 F. Supp. 2d 584, 592-93 (E.D. Va. 2006). Regarding the as-applied challenge, however, the court determined that § 24.2-530 severely burdened the Committee's associational rights because Senator Martin's selection of a primary as the method of nomination forced the Committee to use a nomination process that prevented it from excluding voters with whom it did not wish to associate. *See id.* at 594. The court further held that the Board had provided no compelling state interest justifying this burden. *See id.* at 594-95. The court thus concluded that § 24.2-530 was unconstitutional as applied to the Committee. *See id.* at 595. Accordingly, the court enjoined the Board from requiring the Committee to hold an open primary in 2007. *See id.* On the Board's motion, the district court stayed the injunction pending the outcome of this appeal. *See id.* at 597.

## II.

We review de novo the district court rulings concerning the constitutionality of § 24.2-530.[5] *See United States v. Fulks*, 454 F.3d 410,

---

[5]Although the district court nominally denied summary judgment on the Committee's facial constitutional challenge, the effect of the district court order was to finally decide all claims asserted and all forms of relief requested by the Committee. We thus have jurisdiction over both the Board's appeal of the as-applied ruling and the Committee's cross-

437 (4th Cir. 2006), *cert. denied*, 127 S. Ct. 3002 (2007). In considering a constitutional challenge to a state election law, "we first examine whether [the law] burdens rights protected by the First and Fourteenth Amendments." *Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214, 222 (1989). If the law at issue "burdens the rights of political parties and their members, it can survive constitutional scrutiny only if the State shows that it advances a compelling state interest and is narrowly tailored to serve that interest." *Id.* (citations omitted).

## A.

We first address the Committee's claim that the open primary law is facially unconstitutional. The Committee argues that § 24.2-530

appeal of the facial ruling. *See Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 211 (3d Cir. 2001) (holding that district court decision in declaratory judgment action, denying certain requests for declaration, was final and appealable because "the court issued a judgment and a ruling on every issue submitted"); *cf. Gencorp, Inc. v. Olin Corp.*, 390 F.3d 433, 443 (6th Cir. 2004) (holding that resolution by district court of particular claim "satisfie[d] the finality requirement" of Fed. R. Civ. P. 54(b) and 28 U.S.C.A. § 1291 (West 2006) because court "provided an 'ultimate disposition' of the claim and addressed all forms of relief requested").

After the time period for candidate filing had closed, *see* Va. Code Ann. § 24.2-522(A) (2006), the Committee informed us that no one had filed to challenge Senator Martin in the 2007 primary. Thus, under Virginia law, Senator Martin has been declared the Republican nominee for the 11th District seat, and no Republican primary will be held for that seat in 2007. *See* Va. Code Ann. § 24.2-526 (2006). On this basis, the Board has moved to dismiss the appeals as moot and to vacate the district court order. We conclude, however, that the case is not moot because it presents issues that are "capable of repetition, yet evading review." *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911); *cf. Storer v. Brown*, 415 U.S. 724, 737 n.8 (1974) (explaining that this doctrine is properly applied in cases involving facial or as-applied challenges to election statutes when election at issue has passed but same questions are likely to arise in future elections); *Miller*, 462 F.3d at 319-21 (discussing, in context of ripeness analysis, practical difficulties in waiting until second candidate files for office before bringing suit to challenge open primary law).

impermissibly burdens the right of political parties to associate freely with others who share their political beliefs. The Committee contends that by requiring a party to include in its primary voters who may not share its views, the open primary law alters the party's candidate selection process and the political message that the party conveys to the public.

The Supreme Court has made clear that "the First Amendment protects 'the freedom to join together in furtherance of common political beliefs.'" *Cal. Democratic Party v. Jones*, 530 U.S. 567, 574 (2000) (quoting *Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 214 (1986)). In particular, the Court has "vigorously affirm[ed] the special place the First Amendment reserves for, and the special protection it accords, the process by which a political party 'select[s] a standard bearer who best represents the party's ideologies and preferences.'" *Id.* at 575 (quoting *Eu*, 489 U.S. at 224 (second alteration in original)). The Court has also recognized that "a corollary of the right to associate is the right not to associate." *Id.* at 574. "Freedom of association would prove an empty guarantee if associations could not limit control over their decisions to those who share the interests and persuasions that underlie the association's being." *Democratic Party of the United States v. Wisconsin ex rel. La Follette*, 450 U.S. 107, 122 n.22 (1981) (internal quotation marks omitted). And, "[i]n no area is the political association's right to exclude more important than in the process of selecting its nominee." *Jones*, 530 U.S. at 575.

The Supreme Court has applied these principles in a series of decisions involving state primary statutes. In *La Follette*, the Court held that the State of Wisconsin could not compel the National Democratic Party to seat at its convention delegates selected in Wisconsin's open presidential primary when the voters in that primary did not declare their party affiliation, as required by Democratic Party rules. *See id.* at 126. The Court concluded that requiring the Party to seat delegates selected in violation of Party rules would impose a substantial burden on the Party's associational freedom, and that the state had not articulated a compelling interest justifying this burden. *See id.* at 120-26. The Court stressed that "the freedom to associate for the common advancement of political beliefs necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only." *Id.* at 122 (citation & internal quo-

tation marks omitted). Further, the Court recognized that "the inclusion of persons unaffiliated with a political party may seriously distort its collective decisions—thus impairing the party's essential functions —and [therefore] political parties may . . . protect themselves from intrusion by those with adverse political principles." *Id.* (internal quotation marks omitted).

In *Tashjian*, the Court considered the constitutionality of a Connecticut statute requiring voters in any political party's primary to be registered members of that party. *See Tashjian*, 479 U.S. at 210-11. The Republican Party of Connecticut had adopted a rule permitting independent voters—registered voters not affiliated with any party— to vote in Republican primaries. *See id.* at 210. The Party challenged the state's voter eligibility statute on the ground that it violated the Party's right to associate politically with individuals of its choosing. *See id.* at 211. The Court held that the statute burdened the Party's associational rights because it restricted the group of voters whom the Party could "invite to participate in the basic function of selecting the Party's candidates." *Id.* at 215-16 (internal quotation marks omitted). The statute, the Court explained, "limit[ed] the Party's associational opportunities at the crucial juncture at which the appeal to common principles may be translated into concerted action, and hence to political power in the community." *Id.* at 216. And, the Court held that the state had offered no compelling justification for this burden. *See id.* at 217-25. The Court thus concluded that the statute was unconstitutional as applied to the Party. *See id.* at 225.

In *Jones*, the Court addressed the constitutionality of California's blanket primary system, in which "each voter's primary ballot . . . lists every candidate regardless of party affiliation and allows the voter to choose freely among them," with the candidate of each party who wins the most votes becoming the nominee of that party for the general election. *Jones*, 530 U.S. at 570. Various political parties, each of which had adopted a rule prohibiting nonmembers from voting in the party's primary, challenged the blanket primary law on the ground that it violated their associational rights. *See id.* at 571. The Court agreed that the law impermissibly burdened the parties' right of free association, emphasizing that it "forces political parties to associate with—to have their nominees, and hence their positions, determined by—those who, at best, have refused to affiliate with the

party, and, at worst, have expressly affiliated with a rival." *Id.* at 577. The Court could conceive of "no heavier burden on a political party's associational freedom." *Id.* at 582. Further, the Court concluded that the state had offered no compelling interest warranting this severe burden. *See id.* at 582-86.

By contrast, in *Clingman v. Beaver*, 544 U.S. 581 (2005), the Court rejected a First Amendment challenge to Oklahoma's semiclosed primary system, which allowed a political party to invite only its own members and voters registered as Independents to vote in the party's primary. *See id.* at 584. The Libertarian Party of Oklahoma (LPO) and several Republican and Democratic voters brought the action after the state refused the LPO's request to open its primary to all voters without regard to party affiliation. *See id.* at 584-85. The Court distinguished the Oklahoma primary law from the one struck down in *Tashjian*, which prevented a party from allowing independent voters to participate in its primary. *See id.* at 592-93. The Court noted that the Oklahoma law only prevented the LPO from associating with voters who had already affiliated publicly with another party. *See id.* at 587, 592. The Court thus held that the semiclosed primary system imposed only a minor burden on the LPO's associational rights, and that the state had advanced important regulatory interests justifying that burden. *See id.* at 587, 593-97.[6]

(Text continued on page 12)

---

[6]In a portion of the *Clingman* opinion joined by only three other Justices, Justice Thomas concluded that the LPO and voters already registered with another party had, at most, a minimal constitutional interest in associating with each other. *See Clingman*, 544 U.S. at 587-89 (Opinion of Thomas, J.). Justice Thomas reasoned that "a voter who is unwilling to disaffiliate from another party to vote in the LPO's primary forms little 'association' with the LPO—nor the LPO with him." *Id.* at 589. In a concurring opinion, Justice O'Connor (joined by Justice Breyer) disagreed with the plurality opinion regarding the importance of the associational interests at issue, rejecting the premise "that a voter forms a cognizable association with a political party only by registering with that party." *Id.* at 600 (O'Connor, J., concurring in part & concurring in the judgment). Justice O'Connor expressed the view that "[t]he act of casting a ballot in a given primary may, for both the voter and the party, constitute a form of association that is at least as important as the act of registering." *Id.* at 601. She agreed with the plurality, however, that the

semiclosed primary law at issue imposed only a modest burden on the LPO's associational rights and that the state had articulated sufficient regulatory interests warranting that burden. *See id.* at 604.

"When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks v. United States*, 430 U.S. 188, 193 (1977) (internal quotation marks omitted). In *Clingman*, Justices O'Connor and Breyer concurred in the judgment on the narrowest grounds. Although rejecting the conclusion of the plurality that the associational interests at issue were of only minimal importance, the concurring Justices agreed with the plurality that the semiclosed primary system imposed only a minor burden on the LPO's associational rights and that there were adequate state interests justifying that burden. We must therefore view the latter position as the holding of the Court. *See United States v. Mashburn*, 406 F.3d 303, 308-09 (4th Cir. 2005).

We thus are not bound to accept the concurring Justices' view regarding the importance of the associational interests at stake or their view of the associational bond created by the act of voting in one party's primary. Indeed, the Court has never adopted the view of the *Clingman* concurring Justices concerning the associational bond formed by voting in a party primary. *But cf. Jones*, 530 U.S. at 577 n.8 (noting in dicta that a blanket primary—in which the ballot lists candidates from all parties for each office and all voters are permitted to vote—"may be constitutionally distinct from the open primary, in which the voter is limited to one party's ballot" because the act of voting in one party's primary "'fairly can be described as an act of affiliation'" with that party (quoting *La Follette*, 450 U.S. at 130 n.2 (Powell, J., dissenting)) (citation omitted)).

In any event, we need not resolve today whether the act of voting in one party's primary affiliates a voter with the party sufficiently to protect the party's right to associate with those who share its political beliefs. As explained herein, we do not decide whether the open primary statute, viewed in isolation, impermissibly burdens a political party's associational rights, because it clearly does not do so in light of the other methods of nomination permitted by Virginia law, under which a party is free to exclude voters with whom it does not wish to associate. And, as noted *infra*, at 14, we need not decide this question in reviewing the as-applied ruling because the Board does not challenge the holding of the district

Here, we need not decide whether Virginia's open primary statute, viewed in isolation, impermissibly burdens a political party's right to associate with those who share its beliefs. That is because it is clear that § 24.2-530—when properly viewed in the context of other methods of nomination permitted by Virginia law—does not facially burden political parties' associational rights.

As explained above, Virginia allows political parties to nominate candidates not only by state-run primary but also by other methods controlled and funded by the party. And, by merely choosing any of these other options, a party is free to limit its candidate selection process to voters who share its political views. Thus, the "forced association" that the Supreme Court has condemned, *Jones*, 530 U.S. at 581, simply is not present here. Indeed, neither of the two Supreme Court decisions holding primary laws unconstitutional involved a statute that represented only one of several options for candidate nomination. *See id.* at 569 (indicating that under California law, political parties could only nominate candidates through primaries); *cf. Tashjian*, 479 U.S. at 211 (explaining that although political parties in Connecticut used conventions to select a "party-endorsed candidate," any candidate not endorsed by the party but who received at least 20 percent of the votes at the convention could challenge the party-endorsed candidate in a primary). We agree with the district court that it is constitutionally significant that the primary laws in those cases were "both mandatory and exclusive." *Miller*, 465 F. Supp. 2d at 591.

The Committee nevertheless argues that because Virginia allows political parties to select their candidates by primary, a party has a constitutional right to restrict participation in the primary to persons of its choosing. But as the district court emphasized, a party has no constitutional right even to select its nominees by primary. *See Am. Party of Tex. v. White*, 415 U.S. 767, 781 (1974) (holding that states may dictate the method by which political parties select their nominees). Further, while the Committee argues that a primary has certain advantages over other forms of nomination—such as reduced cost to the party and broader exposure of party candidates to the public—

court that forcing the Committee to conduct an open primary severely burdens its right of free association.

there is no constitutional requirement that Virginia hold a primary at all. And, again, a party is free to select from various methods of nomination in which it can exclude voters who do not share its views—including a closed primary conducted and funded by the party.[7] It is only when the party chooses to hold a primary operated and funded by the state that it must allow all voters to participate.

In sum, because Virginia makes available to political parties multiple options for restricting their candidate selection process to individuals of their choosing, the refusal by the state to fund and operate a closed primary does not burden parties' right of association. *See Miller*, 465 F. Supp. 2d at 595 (holding that "[s]ection 24.2-530 is constitutionally sound when engrafted onto a statutory scheme providing for alternative, less restrictive means of candidate selection"). We therefore affirm the holding of the district court that § 24.2-530 is facially constitutional.

## B.

We next consider the Board's contention that the district court erred in holding § 24.2-530 unconstitutional as applied to the Committee. The district court found that Senator Martin's selection of a primary as the method of nomination pursuant to § 24.2-509(B) "force[d] the . . . Committee to conduct a mandatory open primary for the selection of the party candidate." *Id.* at 594. And, relying on language from our prior opinion in this case, the court determined that "the type of forced association caused by a mandatory open primary causes significant injury to the First Amendment rights of a political party." *Id.*; *see Miller*, 462 F.3d at 317-18 (discussing, in context of standing analysis, constitutional injuries suffered by Committee as a result of open primary law). Further, applying strict scrutiny, the court held that the various state interests offered by the Board in support of the open primary law were not compelling. *See Miller*, 465 F. Supp. 2d at 594-95. The court thus concluded that "[w]hile § 24.2-530 survives facial constitutional challenge, it is constitutionally infirm as applied to the narrow facts of this case." *Id.* at 595.

---

[7]*See supra*, at 4 & n.3.

1.

The Board does not challenge the conclusion of the district court that forcing the Committee to select its candidate through an open primary severely burdens its right of free association. Indeed, the Board concedes that if a political party is compelled to select its candidates "by means of a state-run primary, the State[ ] may not force [the] party to include . . . voters [in] that primary." Opening Br. at 16; *see Miller*, 465 F. Supp. 2d at 591 (noting that the Board "appear[s] to concede" that "forcing a political party to select its nominee solely by open primary" would severely burden the party's associational rights). Rather, the Board's challenge to the as-applied ruling rests upon a more narrow argument: that despite Senator Martin's selection of a primary as the method of nomination, the Committee was not, in fact, forced to select its nominee by primary. We conclude, as did the district court, that this argument lacks merit.

In support of its position, the Board first contends that Va. Code Ann. § 24.2-509(B) simply designates the incumbent legislator (here, Senator Martin) to choose the method of nomination "on behalf of the party." Opening Br. at 19. In this sense, the Board argues that Senator Martin is acting as "a representative of the party, not as an independent individual." *Id.* at 21. The Board thus claims that there is nothing unconstitutional about designating Senator Martin as the particular person to choose the nomination method on behalf of the party, even if he happens to disagree with other party members on this issue. We reject this argument.

Section 24.2-509 bears the title "**Party to determine method of nominating its candidates for office; exceptions.**" Subsection A of that statute provides that "[t]he duly constituted authorities of the political party for the district . . . in which any other office [besides a statewide office] is to be filled shall have the right to determine the method by which a party nomination for that office shall be made." Subsection B of the statute provides, however, that "[n]otwithstanding subsection A . . . [a] party shall nominate its candidate for election for a General Assembly district where there is only one incumbent of that party for the district by the method designated by that incumbent, or absent any designation by him by the method of nomination determined by the party."

The language and structure of § 24.2-509 make clear that, at least for purposes of selecting a nomination method, Virginia does not view the incumbent legislator as a representative of the party. First, the title of § 24.2-509 suggests that selection of the nomination method by the incumbent is an exception to the general rule that "[t]he duly constituted authorities of the [local] political party . . . have the right to determine the method." *See Jakabcin v. Town of Front Royal*, 628 S.E.2d 319, 323 n.3 (Va. 2006) (noting that although the title of a statute is "not a part of the act itself, it may be read to ascertain the act's purpose"). This conclusion is further supported by the "[n]otwithstanding" language of subsection B. And, that subsection expressly distinguishes between selection by the "incumbent" and selection by the "party."

Moreover, while it is true that Senator Martin is a member of the same party whose nominee the Committee is charged with selecting, that fact is not dispositive of whether Senator Martin is acting on behalf of the party in selecting the nomination method. Indeed, the Supreme Court has recognized that "[s]imply because a legislator belongs to a political party does not make her at all times a representative of party interests." *Eu*, 489 U.S. at 225 n.15. It is quite possible that Senator Martin was acting in his individual interest—rather than that of the local party—in selecting a primary as the method of nomination for his seat. *Cf. id.* ("In supporting the endorsement ban, an individual legislator may be acting on her understanding of the public good or her interest in reelection.").

The Board argues alternatively that even if Senator Martin is not acting on behalf of the party in selecting a primary as the method of nomination, the Committee is not bound by that selection. Specifically, the Board claims that the Committee can use internal party rules to compel Senator Martin to select the Committee's preferred method of nomination in order to appear on the ballot. *See* Va. Code Ann. § 24.2-508(i) (2006) (giving political parties the power to "make [their] own rules and regulations"); Va. Code Ann. § 24.2-525 (2006) (providing that "[o]nly a person . . . who has complied with the rules and regulations of his party[ ] shall have his name printed on the ballot provided for the primary election"). The Board also contends that the Committee could "disassociate" itself from Senator Martin if he

refuses to comply with the Committee's wishes regarding the method of nomination. Opening Br. at 25. We reject this argument as well.

As an initial matter, the Board's contention that the Committee may use various means to compel Senator Martin to accede to its wishes regarding the method of nomination appears contrary to § 24.2-509(B), which plainly affords Senator Martin the right to select —in binding fashion—the method of nomination for his seat. *See* Va. Code Ann. § 24.2-509(B) (providing that "[a] party *shall nominate* its candidate for election for a General Assembly district . . . *by the method designated by [the] incumbent*" (emphasis added)). Moreover, even if it were theoretically possible for the Committee to dictate the selection process in this manner, we do not think the Committee should be required to take such drastic affirmative steps against an incumbent officeholder—with whom it might otherwise agree—in order to preserve its right of free association. Indeed, the upheaval that such action might cause within the local party could conceivably alter the identity of its candidates and the message it conveys to the public, thus implicating the same associational freedoms that the Committee seeks to vindicate here.

2.

Having rejected the Board's arguments that the open primary law does not severely burden the Committee's associational rights, we now consider whether the statute "is narrowly tailored to serve a compelling state interest," *Jones*, 530 U.S. at 582. The Board advances four state interests that it claims are compelling. We address these interests in turn.

First, the Board contends that "preserving Virginia's sovereign choices regarding the structure of its electoral system is a compelling interest." Opening Br. at 28. This argument focuses on the fact that Virginia does not require voters to register by party. The Board claims that "Virginia has never implemented a state-run closed primary" and that requiring it to do so would involve *de facto* party registration because voters' eligibility would be based on their past voting records and willingness to commit to a party in writing. *Id.* at 29. This argument fails to establish a compelling interest, however, because Virginia already allows political parties to adopt "requirements

determined by the . . . party for participation in its presidential primary." Va. Code Ann. § 24.2-545(A). In particular, such requirements "may include, but shall not be limited to, the signing of a pledge by the voter of his intention to support the party's candidate when offering to vote in the primary." *Id.* The Board does not explain how the voter restrictions sought by the Committee—which would be permitted by statute in a presidential primary—would undermine Virginia's election regime if employed in a primary for state office. Indeed, imposing such restrictions in a presidential primary would presumably affect far more voters than in a senatorial district primary.

Second, the Board contends that "Virginia has a compelling interest in preserving the integrity of its election process"—specifically, in ensuring that its primaries comply with the Voting Rights Act. Opening Br. at 30 (internal quotation marks omitted). But other than vague assertions of "doubts" and "serious questions" about the validity of Virginia's elections, *id.* at 31, the Board fails to explain how the restrictions proposed by the Committee would violate federal law. Such speculation does not establish a compelling interest justifying a burden on the Committee's associational rights.

Third, the Board argues that "preserving an individual's privacy regarding his or her political preferences is a compelling governmental interest." *Id.* As the district court recognized, however, this argument is foreclosed by *Jones*, which held that privacy concerns were not a compelling interest justifying the associational burden caused by a blanket primary law:

> Even if (as seems unlikely) a scheme for administering a closed primary could not be devised in which the voter's declaration of party affiliation would not be public information, we do not think that the State's interest in assuring the privacy of this piece of information in all cases can conceivably be considered a "compelling" one.

*Jones*, 530 U.S. at 585.

Last, the Board asserts that encouraging voter participation is a compelling state interest, in part because voters in districts where one party is dominant may regard the primary as tantamount to the gen-

eral election. While allowing the broadest possible group of voters to participate in a primary may be desirable, this interest cannot overcome the severe burden placed upon a political party when it is forced to associate with those who may not share its views. Indeed, *Jones* rejected an argument similar to the one advanced by the Board, emphasizing that "a 'nonmember's desire to participate in the party's affairs is overborne by the countervailing and legitimate right of the party to determine its own membership qualifications.'" *Id.* at 583 (quoting *Tashjian*, 479 U.S. at 215 n.6).

We therefore conclude that none of the reasons articulated by the Board constitutes a compelling state interest justifying a severe burden on the Committee's right of association. Accordingly, we affirm the holding of the district court that § 24.2-530 is unconstitutional as applied to the Committee.

## III.

For the reasons discussed above, we affirm the district court rulings that Va. Code Ann. § 24.2-530 is facially constitutional but that the statute is unconstitutional as applied to the Committee.

*AFFIRMED*